MAURICE R. LEAMAN, Appellant, v. CAMPBELL 66 EXPRESS TRUCK LINES, INC.—No. 39661.—199 S. W. (2d) 359.

Division One, January 13, 1947.

Rehearing Denied, February 10, 1947.

940

*Hamlin & Hamlin, E. C. Hamlin, J. N. Burroughs* and *L. Cunningham* for appellant.

*Neale, Newman, Neale, Freeman & Wampler, Homer D. Wampler, Jr., Elvin S. Douglas* and *Herman Pufahl* for respondent.

942

BRADLEY, C.—Action by a husband under the penalty section (Sec. 3652 R. S. 1939) of the death statute for $10,000 damages for death of his wife alleged to have been caused by the negligence of defendant. Verdict and judgment went for defendant and plaintiff appealed.

Defendant (respondent) has filed motion to dismiss the appeal; submitted the cause on the motion, and did not brief on the merits. This is a second motion to dismiss the appeal, as will appear infra. We will first rule the motion. The grounds alleged in the motion are: (1) That this court does not have jurisdiction of the appeal; (2) that this court had no authority to extend the time in which to file transcripts; (3) that appellant did not deliver to respondent as required by rule 1.09 two copies of his brief 30 days before day on which cause was set for hearing; and (4) that appellant did not print the entire transcript and did not serve respondent with a typewritten copy thereof within 15 days after the date on which appellant was required by civil code sections 135(a) and 138 (Laws 1943, pp. 393, 394) to file transcript with the clerk of the trial court.

The trial commenced June 1, 1945, and verdict returned June 2d. Motion for a new trial was filed June 12th; overruled June 28th; notice of appeal filed July 5th. Sec. 135 of the civil code (Laws 1943, p. 393) provides that within 90 days after an appeal is taken the appellant shall file the transcript of the record with the clerk of the trial court. The 90 days expired October 3rd, but August 25th the trial judge extended the time for filing transcript 60 days. The 60 days extension from October 3rd expired December 2d. On December 2d, the trial court again extended the time for 60 days. The second 60 days extension expired January 31, 1946, which was 26 days in excess of 6 months from time of appeal. See rule 3.26.

The transcript was delivered by the reporter to plaintiff's counsel January 28th, and copy served on defendant's counsel January 29th. February 12th, the trial judge approved the transcript and it was filed with the clerk of the trial court February 18th. A certified copy of the transcript was received by the clerk of this court March 29th, but was returned same day because a certified copy was sent in-

stead of the original. Thereafter plaintiff sought unsuccessfully in the trial court to get time further extended for filing transcript.

April 13, 1946, respondent filed motion here to dismiss the appeal, and May 7th the appeal was dismissed. June 10th plaintiff filed motion to set aside the order of dismissal and asked that time for filing transcript be enlarged or extended. July 12th the motion to set aside the order of dismissal was sustained; cause was reinstated, and time for filing transcript was extended to July 26th. July 22d transcript was filed in this court and the cause set for argument September 13th, and the second motion to dismiss filed September 10th. July 27th, plaintiff's (appellant's) brief, with service copy, was filed. The service copy shows service on defendant's counsel April 4, 1946.

In the file is a certificate of the court reporter stating that he was informed by plaintiff's counsel, when transcript was ordered, that plaintiff would have to pay for the transcript in installments; that the cost of the transcript was $201.60; that this sum was paid in three installments, and that the last installment was paid January 28, 1946, the day when transcript was delivered by the reporter to plaintiff's attorney. There is also in the file an affidavit of the plaintiff that his income was $35 per week and that out of that he had to pay rent and to provide for his four children, and that he had to pay for the transcript in installments.

That part of the transcript which would be termed the record proper under the old practice recites that verdict and judgment were on June 2, 1945, and that the motion for a new trial was filed June 28th, but that part of the transcript which would be termed the bill of exceptions under the old practice recites that the motion for a new trial was filed June 12th, which was timely under Sec. 116 of the civil code (Laws 1943, p. 388). Also, it appears that the trial court, on June 27, 1946, made an order nunc pro tunc showing that motion for new trial was filed June 12, 1945. In the brief, on the first motion to dismiss, it is stated that the motion for a new trial was not filed until June 28th, and a memorandum in the file recited that the appeal was dismissed on May 7, 1946, "mainly because" the copy of the transcript first sent to this court showed that judgment was entered June 2d, and motion for a new trial filed June 28th.

At the present time there is no claim that the motion for a new trial was not timely filed and that respondent has not been served with copy of typewritten transcript 15 days before July 26, 1946, extended date for filing transcript, and there is no claim now that respondent has not been served with appellant's brief 30 days before September 13, 1946, date cause was set for argument when the order was made in this court extending time to file transcript. In the situation it is quite apparent that there is no merit in the present motion to dismiss the appeal unless it be on the alleged ground that

this court did not have authority to extend the time in which to file transcript.

Did this court have such authority? Sec. 6(b) of the civil code (Laws 1943, p. 358) provides: "(b) When by this code or by a notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion permit the act to be done after the expiration of the specified period where the failure to act was the result of excusable neglect; but it may not enlarge the period for filing a motion for or granting a new trial, or for commencing an action or taking an appeal as provided by this code."

Rule 1.30 of this court provides: "If, after filing a notice of appeal, the appellant fails to take the further steps to secure appellate review within the periods of time allowed or as extended by the trial court the appellate court may dismiss the appeal unless, for good cause shown, it has granted further time for taking such steps."

In Clader v. City of Neosho (banc), 354 Mo. 1190, 193 S. W. (2d) 620, it is made quite clear that in the situation here this court had ample authority to enlarge or extend the time for filing the transcript if it were found that plaintiff's failure to file within the time to which the trial court might extend time (Rule 3.26) was due to excusable neglect. And manifestly such was found and justly so when the order was made July 12, 1946, extending the time to file transcript. It would serve no useful purpose to repeat the discussion in the Clader case. The motion to dismiss the appeal is overruled.

Error is assigned: (1) On defendant's instructions 9, 11, and 15; (2) on the admission and exclusion of evidence; and (3) on argument of counsel. A brief statement of the facts will be helpful in a better appreciation of the assignments.

Defendant's home office is at Springfield, Missouri, and it operates, as a common carrier, a line of trucks, some 200 in number, between Chicago, Illinois, and Tulsa, Oklahoma, and between Kansas City, Missouri, and Fort Smith, Arkansas. Plaintiff's wife was killed about 8:30 P. M., December 23, 1944, in a collision between one of defendant's trucks and a car in which she was riding as a guest. The collision occurred in St. Clair County, Missouri, about 2-3/4 miles north of Osceola on State highway 13. The car in which plaintiff's wife was riding was going north and the truck was going south.

Plaintiff went to the jury on the charges of negligence, in the alternative, that (1) ▇▇ the operator of the truck was negligent in that he failed to keep a vigilant lookout; (2) drove the truck at a high and dangerous rate of speed; (3) failed to drive as near as practical on the right hand side of the road; (4) failed to dim the lights;

(5) to slacken speed. The defense was that defendant's operator was not negligent and that the sole cause of the death was the negligence of the driver of the car in which deceased was riding.

Plaintiff is a printer and resided in Osceola with his wife and four children whose ages ranged from 10 to 18 years; he was employed by a newspaper in Osceola. Walter J. Manning, the driver of the car in which plaintiff's wife was riding, resided in the country about three miles north of Osceola on highway 13. Plaintiff had made his Christmas purchases; more than he could carry to his home, and Manning, in his car, took plaintiff and the Christmas packages to plaintiff's home about 6:30 or 7:00 P. M. on the day of the accident. Manning and plaintiff knew each other, but there was no especial friendship between them. Plaintiff said that Manning merely volunteered to help him home with the Christmas packages. Plaintiff's wife was not acquainted with Manning. After arriving at plaintiff's home, plaintiff and his wife "played some Christmas carols", the wife playing the piano and plaintiff the violin. Manning invited them to go to his home in the country "to play the piano out there." The invitation was accepted and about 8:30 P. M., plaintiff, his wife and Manning left plaintiff's home in Manning's car, to go to Manning's home. Manning drove, and plaintiff said that the three sat in the front seat, he next to Manning and his wife on his (plaintiff's) right. Defendant's truck was enroute from Kansas City to Springfield and the truck and car collided on or near a curve about a quarter of a mile south of Manning's home. The car was overturned; fell on plaintiff's wife; her neck was broken and she died immediately.

The road was blacktop 24 feet in width; the shoulders were of gravel and 5 or 6 feet in width. On the west side was a rather high fill, and on the east the hill side. Approaching the place of collision from the south, as the place was fixed by plaintiff, the road curves to the west and then back to nearly north, perhaps a little northeast. The curve back to the north is rather sharp. Plaintiff's evidence tended to show that the collision occurred on the east side of the road (Manning's side) and a short distance north of the point where the curve ends and the road straightens out to the north. Defendant's evidence tended to show that the collision occurred in the curve, and on the west side of the road (defendant's side) and at a point several feet south of the point fixed by plaintiff's evidence.

Plaintiff, his wife, and Manning were the only occupants of Manning's car. E. J. Planchon, who resided in Springfield and who had been driving for defendant for 11 years, was driving defendant's truck. With Planchon was a young man, Hollis Burroughs, who also resided in Springfield, and was a former employee of defendant.

Of the situation and collision plaintiff testified: "He (Manning) was on his side of the road, going north, and the truck was coming from the north. The lights on the truck were very bright, so bright

you couldn't see both its lights; couldn't see the clearance lights on it, whether it was a truck or car or what it was. At that time I couldn't tell that it was a truck until I saw the shadow of the side of the truck. Manning drove at a moderate rate of speed all the way out there, and just the instant we sensed the danger he slowed up, then the collision occurred; he was not driving over 20 miles an hour and had applied his brakes. When the crash came he (Manning) was on his side of the road."

Manning testified: "I was driving towards my home and about 2-3/4 miles north of Osceola we were circling a curve and I was driving at a moderate rate of speed. All of a sudden I was blinded by the lights of this car (the truck). I tried to prevent anything happening; set my car as much to the shoulder as I possibly could. The truck struck my car and that is how it happened." On cross-examination Manning became greatly confused, but maintained to the last that he was on the east side of the road when the collision occurred.

Both Planchon and Burroughs testified that the collision occurred on the west side of the road. Planchon said that he was driving about 30 miles per hour; that he "met an automobile coming around the curve" at 40 or 45 miles per hour; that he thought "he (Manning) was driving too fast to make the curve." He further testified: "Well, I was watching it (the car) awful close, because that is a bad curve, about as bad a curve as we have got on that run; and this car was coming down there, and it really was driving too fast to make that curve, and just as the car got possibly fifty feet from me the man must have lost control of it, or something, and it just dodged completely to my side of the road, and I had barely time to get on the shoulder and apply the brakes and come as near stopping as possible, and the car hit the left front of this truck that I was driving." Manning's car overturned on the east side of the blacktop and still headed north. The truck, which was loaded with 24,000 pounds of steel, overturned on the east side of the road, mostly on the shoulder, and about 150 feet south of the point where the car overturned. And when the truck came to rest it was headed north.

Burroughs' evidence was corroborative of that of Planchon. Also, skid marks on the road testified to by the sheriff and others tended to show that the collision occurred on the west side of the road.

Plaintiff's instructions directed a verdict for plaintiff if the jury found that deceased was a guest in Manning's car and that defendant's truck driver was negligent as submitted and that such negligence contributed to the death of deceased. Defendant's instruction No. 9 follows:

"The court instructs the jury that the charge laid by the plaintiff against the defendant in this case is one of negligence. Negligence is not in law presumed and the recovery may not be had on a charge of negligence except where such charge is sustained by the preponder-

ance, that is, the greater weight of the credible evidence *to the reasonable satisfaction of the jury.* But it does not devolve upon the defendant in this case to disprove said charge, but rather the law casts the burden of the proof of said charge upon the plaintiff, and said charge of negligence must be sustained by the preponderance, that is, the greater weight of the credible evidence *to the reasonable satisfaction of the jury.* If, therefore, you find and believe the evidence touching the charge of negligence against the defendant as submitted in these instructions does not preponderate in favor of the plaintiff, *or is evenly balanced,* then in either event the plaintiff is not entitled to recover against the defendant and your verdict must be for the defendant" (italics ours).

Plaintiff's instructions, as is usual in such cases, were to the effect that if found that deceased was a guest, and the evidence tended to show she was and there was no evidence to the contrary, then Manning's negligence, if any, was no defense unless his negligence was the *sole* cause of her death, and defendant's instructions on that subject were about to the same effect.

In Nelson v. Evans, 338 Mo. 991, 93 S. W. (2d) 691, an instruction containing the phrases *evenly balanced* and *to the reasonable satisfaction of the jury,* and in other respects similar to No. 9 here, was condemned. The instruction in the Nelson case concludes as follows: "If, therefore, you find the evidence touching the charge of negligence against the defendant is evenly balanced, or the truth as to the charge of negligence as against the defendant remains undetermined in your minds, after fairly considering the evidence, then your verdict must be for the defendant." The difference between the present instruction and the instruction in the Nelson case is that the Nelson case instruction contained the statement that "negligence is a positive wrong", and the phrase "to the reasonable satisfaction of the jury" was followed by "that the charge is true as laid" and the language in the concluding part that the truth of the charge, etc., remains undetermined in your minds. The Evans case instruction was more objectionable of course than the present instruction.

In the Evans case reference was made to what was said about burden of proof instructions in Mitchell v. Dyer (Mo. Sup.), 57 S. W. (2d) 1082, and Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. (2d) 58, and then it was stated that it was suggested in those cases "that a short instruction on the burden of proof with a definition of what is meant by burden of proof is all that ought to be given in civil cases." In the Rouchene case the court said [89 S. W. (2d) 1. c. 63] : "Instructions on burden of proof should not state too many technical rules and, if an attempt is made *to go into degrees of preponderance of evidence,* it is almost certain to get the matter so complicated that a jury of laymen will have no idea at all as to what is meant" (italics ours). Instruction No. 9 is argumentative, repe-

titious on where the burden of proof lies, and transgresses the suggestion in the Evans case as to the kind of burden of proof instruction that *ought* to be given in civil cases, but such a cautionary instruction, as in No. 9, so far, has not been held to constitute reversible error. The giving or refusal of cautionary instructions is usually largely within the sound discretion of the trial court. Lewis v. Zagata, 350 Mo. 446, 166 S. W. (2d )541, l. c. 544, and cases there cited. The rules concerning cautionary instructions are set out in Morris v. E. I. Dupont De Nemours & Co. et al., 351 Mo. 479, 173 S. W. (2d) 39, l. c. 42, and heading the list is this rule: "Parties are not entitled to them as a matter of right so that it is not reversible error to refuse them."

Defendant's instruction No. 11 told the jury that negligence of Manning "may not be imputed" to deceased, but went on to tell the jury that if they found that Manning's negligence, if any (setting out the acts relied on), was the sole cause of the collision and death, then the verdict would be for defendant. Plaintiff says that the instruction is bad because of the use of the word *may* in the direction that Manning's negligence may not be imputed to plaintiff's wife. Also, plaintiff says that the instruction is bad because it "authorized the jury to impute" Manning's negligence to plaintiff's wife "without finding that the driver of the automobile and the guest were on a joint enterprise." Plaintiff cites Borrson v. Missouri-Kansas-Texas R. Co. (Mo. Sup.), 161 S. W. (2d) 227; Smith v. St. Louis-San Francisco R. Co., 321 Mo. 105, 9 S. W. (2d) 939; Hall & Robinson v. Wabash R. Co., 80 Mo. App. 463; 39 C. J., p. 1393. The Hall case and the Corpus Juris text cited deal with the word *may*. The words *may not* in the instruction mean *will not*. The contention that the instruction authorizes the jury to impute Manning's negligence, if any, to plaintiff is without support, and plaintiff was not likely prejudiced by the use of may not. That can be corrected on retrial.

Instruction No. 15 is another cautionary instruction telling the jury not to be influenced by sympathy. The point on the admission of evidence pertains to the cross-examination of Manning and the admission of defendant's exhibit A. There was no error in these respects.

Plaintiff sought to show as a pecuniary loss expenses incurred for a housekeeper to care for his children, but such evidence was excluded. However, he was permitted to show expenses of his wife's funeral, and the court instructed on pecuniary loss. In an action under the penalty section of the wrongful death statute the whole of the possible recovery is penalty, but the jury may properly take into consideration the pecuniary loss, hence evidence of such loss is competent. Grier v. Kansas City, C. C. & St. J. Ry. Co., 286 Mo. 523, 228 S. W. 454; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920, l. c. 924; Boyd v. Mo. Pac. Ry. Co., 249

Mo. 110, 155 S. W. 13, Ann. Cas. 1914D, 37; Lackey v. United Rys. Co., 288 Mo. 120, 231 S. W. 956, 1. c. 962. And since the whole of the possible recovery is penalty, the full amount may be recovered although there is no pleading or evidence as to pecuniary loss, Lackey v. United Rys. Co., supra, but as we deduce it is necessary to plead pecuniary loss if it is desired to offer evidence of such.

▮ Plaintiff did not specifically plead pecuniary loss, hence the court properly excluded the evidence mentioned. It was held in Hartzler v. Met. St. Ry. Co., 140 Mo. App. 665, 126 S. W. 760, that evidence of the capacity of a deceased housewife to do housework was competent, but ▮ that was when the penalty section of the death statute was held to be both penal and compensatory, and now it is held that the section is penal only (Cummins case, supra). However, such would not affect the competency of evidence of the capacity of a deceased wife to do housework, since the jury may consider evidence of plaintiff's pecuniary loss if pleaded and offered. We can perceive of no reason why, on retrial, plaintiff may not show what he is compelled to pay out for the care of his minor children if such sum is reasonable in amount, and the petition is amended to plead pecuniary loss.

▮ The record respecting argument shows the following: "Mr. Douglas (counsel for defendant): Now, Mr. Leaman says he knew where to find Mr. Manning, namely, in the main beer joint in Osceola, Sam's Place. Mr. Hamlin (counsel for plaintiff): We object to that; there is no evidence here that Sam's Place is the main beer joint in Osceola. The Court: Gentlemen of the jury, you will base your verdict on the evidence you have heard from the witnesses and the instructions of the court. Mr. Douglas: . . . Gentlemen, human experience has taught us that whenever tracks from a beer joint lead to the scene of an accident of this kind—Mr. Hamlin: I object to the remark of counsel; there is no evidence that tracks ever run to a beer joint. The Court: Gentlemen of the jury, you will base your verdict solely on the evidence of the witnesses and the instructions of the court. The attorneys, you must bear in mind, make arguments of course, and draw inferences, but you will be guided solely by the evidence as coming from the witnesses and the instructions given you by the court and base your verdict on the evidence and the instructions of the court. Mr. Pufahl (counsel for defendant): Now, gentlemen, isn't it just a little peculiar that the plaintiff in this case would bring his suit to Polk County instead of trying it in St. Clair County where he is known? Mr. Hamlin: We object to that. The Court: Proceed. Mr. Pufahl: Is Manning interested in this case? Could it be that he intends to bring a similar suit—Mr. Hamlin: We object to that; that is not proper. The Court: Proceed, gentlemen."

The argument about the "beer joint" and the "tracks from a beer joint" was probably meant to imply that Manning was intoxicated.

So far as the record shows the only thing of an intoxicating nature that Manning had drunk was one bottle of 3.2 beer shortly before he and plaintiff left town to go to plaintiff's home with the Christmas packages. And there was nothing in the record to justify the implication that there was anything sinister in the fact that the suit was filed in Polk County instead of St. Clair County where the cause accrued and where plaintiff resided. And if Manning had a suit pending against defendant such was not shown. These implications appear from this argument: (1) That Manning was drunk when the collision occurred; (2) that he too had a suit pending against defendant or might bring a suit; and (3) that there must be something about plaintiff's reputation that made him unwilling to risk his cause in the county where he resided and where it accrued.

There is no evidence in the record to support either of the implications except that Manning might bring a suit, and that the argument, except as to the possible suit by Manning, was improper will, we think, be conceded. However, as to the argument that plaintiff knew that he would find Manning in the main beer joint and about the tracks leading from a beer joint, plaintiff seemed satisfied with the court's admonition to counsel. No request was made for a more definite ruling and no objection was made for failure to rule more definitely. In the situation and notwithstanding Sec. 122, Laws 1943, p. 389, dispensing with *exceptions* the complaint on the argument about the beer joint, the tracks, etc., would not have been for review prior to Rule 3.27. Stokes v. Godefroy Mfg. Co. (Mo. Sup.), 85 S. W. (2d) 434, l. c. 440; Cotton Lumber ▪▪▪ Co. v. LaCrosse Lumber Co., 200 Mo. App. 7, 204 S. W. 957, l. c. 961. Rule 3.27 provides: ''Plain errors affecting substantial rights may be considered on motion for new trail or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom.'' We think Rule 3.27 is to be properly invoked here.

All courts agree that where counsel in argument to the jury make statements of prejudicial matters not in evidence, and such is for review, it will afford ground for a new trial unless such error is in some way cured. Jones v. Kansas City (Mo. Sup.), 76 S. W. (2d) 340; Beer et al. v. Martel, 322 Mo. 53, 55 S. W. (2d) 482.

No specific ground was given for the objections to the argument on plaintiff bringing his suit in Polk County and not in his home county, but the argument was so palpably improper, because there was no evidence to support it, the situation is similar in principle, we think, to a situation where an excluded question indicates that the answer would be pertinent. In such situation the exclusion is for review on appeal notwithstanding absence of offer of proof. See City of Festus v. Kausler (Mo. App.), 77 S. W. (2d) 197, l. c. 199, and cases there

cited. Also, Rule 3.27 is applicable here. The scope and character of argument is usually a matter for the sound discretion of the trial court, Hancock v. Kansas City Terminal Ry. Co., 347 Mo. 166, 146 S. W. (2d) 627, l. c. 630, and cases there cited; State ex rel. Kresge v. Shain et al., 340 Mo. 145, 101 S. W. (2d) 14, l. c. 20, but as appears in the Kresge case that discretion may be abused.

We do not mean to criticize the able court or able counsel, but the argument, except as to the possible suit of Manning, was, we think, highly prejudicial. The judgment should be reversed and the cause remanded, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Conkling, J.,* not sitting because not a member of the Court when cause was submitted.