241 S.W.2d 268 (1951)
ENYART
v.
SANTA FE TRAIL TRANSP. CO.
No. 42128.
Supreme Court of Missouri, Division No. 1.
July 9, 1951.
*269 Clem W. Fairchild, Albert Thomson, and Johnson, Davis, Thomson, Vandyke & Fairchild, all of Kansas City, for appellant.
Morris Matuska, Pittsburg, Kan., Clay C. Rogers, Kansas City, Bruner, Ressler, Farabi & Matuska, Pittsburg, Kan., Rogers, Field & Gentry, Kansas City, of counsel, for respondent.
HOLLINGSWORTH, Judge.
In the Circuit Court of Jackson County, Missouri, plaintiff recovered a verdict and judgment of $20,000 for personal injuries sustained when she was struck by a falling metal sign maintained by defendant. Defendant appeals, alleging error in the giving and refusing of instructions, the refusal of its motion for a physical examination of plaintiff, improper argument of plaintiff's counsel, and gross excessiveness of the verdict.
Plaintiff's injuries were suffered on March 24, 1947, at Baxter Springs, Kansas, where defendant maintained a bus depot. This depot was located upon one of the principal streets. Fifteen feet above and over the sidewalk there was attached to the building in which its depot was located a metal sign owned and maintained by defendant and used to advertise its business. As plaintiff walked along the sidewalk and under the sign, it fell, striking her head and back and injuring her. Her suit was pleaded and submitted under the doctrine of res ipsa loquitur.
In the main instruction given in behalf of plaintiff, the court hypothesized as one of the facts required to be found to warrant the return of a verdict in favor of plaintiff that there was a "large metal sign" attached to the bus station. Defendant complains that the instruction assumes and concludes for the jury that the sign in question is a "large" sign. In paragraph 2 of the petition it was alleged "defendant had attached to said building a large metal sign * * *." In its answer, defendant expressly admitted the allegations of paragraph 2. Plaintiff's evidence tended to show the sign weighed twenty-five to thirty pounds; defendant's evidence that it weighed about ten pounds. There was also some controversy as to its shape. But, regardless of its weight or shape, it was admittedly a "large metal sign". The court did not err in so assuming and in so instructing the jury. See cases collected in 14, West's Missouri Digest, Trial, 192.
Defendant assigns as error the refusal of the court to give an offered cautionary instruction to the effect that it was the duty of the jury to first decide whether under the evidence and instructions defendant was liable before considering money damages; and that the jury should not be influenced by passion, prejudice or sympathy. We have recently held that the giving of an instruction similar to the one above outlined was not error. West v. St. Louis Public Service Company, Mo. Sup., 236 S.W.2d 308, 310-311. However, we further held in that case and others therein cited that the giving or refusal of cautionary instructions, such as the one under consideration, is largely within the discretion of the trial court, and that we will not interfere unless the exercise of that discretion is clearly erroneous. No such showing is made.
Defendant also contends the trial court erred in refusing its motion for permission to have a physical examination made of plaintiff after she, on July 13, 1949, amended her petition alleging an aggravation *270 of a previous osteo-arthritis, pain in many parts of her body, numbness of legs, bloating bowels, dizzy spells and inability to use her right arm. This motion was overruled on February 8, 1950. On the morning of the trial, defendant orally moved for such an examination and this was also denied. Plaintiff had submitted to examinations on July 27 and 28, 1948, by physicians selected by defendant. Defendant rests upon the bald declaration that the denial of the motion was prejudicial, but does not point out or even suggest in what manner it was so prejudiced. The trial court cannot be convicted of an abuse of discretion in the absence of a showing of prejudicial error. R.S.Mo. § 512.160, subd. 2.
Defendant contends the closing argument of counsel for plaintiff in four specified instances prejudiced the jury and resulted in a verdict penal in its nature rather than compensatory.
The background of one phase of the argument complained of was: Plaintiff's husband was cross-examined by defendant's counsel as follows:
"Q. What is your present occupation, Mr. Enyart? A. Taking care of her. [Plaintiff]
"Q. How long has it been since you have worked? A. About two years; a little better than two years, directly after she got hurt.
"Q. Are you on State Relief, something of that kind? A. Yes, sir; Old Age Assistance."
Plaintiff's counsel construed this as an attempt to belittle Mr. and Mrs. Enyart and in his closing argument stated: "You proved that your company took these two fine people out of productivity and put them on the county. * * * You proved by him that they are on relief and he had to stop his job after his wife got hurt to take care of her, and had to go on relief. * * * And now in the name of justice, just common decency, I appeal to you ladies and gentlemen to do the thing that is right and take these good people off of the county and put them on the bus company. The bus company took them out of productivity and put them on the county."
Another phase of the argument of plaintiff's counsel of which defendant complains arose out of defendant's criticism of the physicians who testified in behalf of plaintiff. Defendant's counsel, in argument, said of these physicians: "As to the testimony of Dr. Montee, he is not Mrs. Enyart's doctor. He is Sylvan Bruner's. He is the lawyer's doctor. * * * He is not Mrs. Enyart's doctor. * * * Is Dr. Skoog her doctor? No, he is not. * * * Dr. Skoog, he is the lawyer's doctor. He is Mr. Rogers' doctor. He has used him many, many times."
The record shows that defendant had also employed and used as witnesses one physician from Kansas City and two from Joplin, and had read in evidence the depositions of two physicians, Doctors Pickrell and McKinney, from Baxter Springs. In answering defendant's argument above quoted, counsel for plaintiff said: "It is wrong for anybody to help this poor woman, this unfortunate woman, but it is all right for them to hire doctors. The lawyer for the defendant can hire doctors. * * It is all right for their lawyers to go hire doctors, yes, but it is wrong for anybody to help this woman."
The background of another, phase of the argument complained of was: Defendant's counsel had argued to the jury: "You also know that we cannot subpoena persons outside the State of Missouri. This suit is here in Kansas City. We can't jump into central Kansas and bring people in."
In response to that argument, counsel for plaintiff, in his closing argument, stated: "You couldn't subpoena them, but you could have taken their depositions just like you took Pickrell's and McKinney's; just like you did that. Don't try to fool this jury. You can't fool me."
In none of the three above instances complained of did defendant's counsel object to the argument. The general rule is that when appellant's counsel does not object to argument he deems improper at the time it is made, he cannot thereafter object *271 upon review. Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, 684; Clark v. McKeone, Mo.Sup., 234 S.W.2d 574, 577. The argument here complained of does not come within the rule announced in Leaman v. Campbell 66 Express Truck Lines, Inc., 355 Mo. 939, 199 S.W.2d 359, 366, wherein we held that palpably prejudicial argument of matters not in evidence may be reviewed under our Rule 3.27, even though not objected to when made. In the first instance above cited the argument was directed to evidence adduced by defendant. In the other two instances it was retailatory to arguments made by defendant's counsel. We are not convinced that in either of the instances cited the argument constitutes plain error so affecting the substantial rights of defendant as to authorize a reversal of this case under Rule 3.27.
Over the objection of defendant, plaintiff's counsel was permitted to argue: "I know what was going through your minds at the time he was talking about that sign and telling you it looked like a football. I know what was going through all your minds because you couldn't help but think and say: `Where in the world is the sign? Let me take a look at it. Let me feel it in my hands. Let me see its size and nature.' And it is admitted by the solemn pleadings in this case that the sign was in the exclusive possession * * * of this defendant. And you were saying, `Let us get our hands on that sign.' * * but when it came to your inquiring into the facts of this case to determine how badly this woman was hurt, saying, `Let's see the sign; let's feel it; let's see what it might do when dropped from a distance of fifteen feet above the sidewalk; let's see if it would dent the human skull,' they don't bring it here."
The petition pleaded and defendant's answer admitted that the sign was in the exclusive possession of defendant. Written interrogatories propounded to and answered by defendant and filed and introduced in evidence in the case admitted that the sign was owned by defendant. During the examination of defendant's witness, Bevan, defendant's counsel admitted that defendant was then in exclusive possession of the sign. At the trial defendant took issue with plaintiff as to the weight and shape of the sign. No explanation was made why defendant did not produce it. Under these circumstances, we hold the argument was proper. McNeill v. Fidelity & Casualty Co., 336 Mo. 1142, 82 S.W.2d 582, 588; Norton v. Johnson, 359 Mo. 1214, 226 S.W.2d 689, 710-711.
Defendant finally contends the verdict is grossly excessive. Much of defendant's argument is directed to the thesis that plaintiff's evidence as to the extent of her injuries is unbelievable and, in some instances, contrary to known physical laws and facts. Of course, we are not required to accept evidence contrary to known physical facts. Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S.W.2d 1079. We have found none. The credibility of the evidence on the question of gross excessiveness of the verdict was, in the first instance, a matter for the consideration of the trial court. In determining whether it was grossly excessive, the trial court has wide discretion. If the evidence, viewed in the light most favorable to plaintiff, affords reasonable and substantial support of the order affirming the jury's award, then there is no abuse of discretion, and the verdict must be sustained. Steuernagel v. St. Louis Public Service Co., Mo.Sup., 238 S. W.2d 426, 431-432. The test is whether, from that standpoint, the verdict is grossly excessive. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310, 316; Cruce v. Gulf, Mobile & Ohio R. Co., Mo.Sup., 238 S.W.2d 674.
Plaintiff was seventy-two years of age when injured. Prior to her injuries, she was an active, cheerful woman, doing all of her housework and the gardening. Her injuries, as testified to by herself, her neighbors and competent medical witnesses, have been summarized by her counsel: "(1) Concussion of and damages to brain, resulting in mental weakness and deterioration, loss of memory, hysteria and aberrations, also headaches, dizziness and complete incapacity to work or perform service; (2) fracture of cervical vertebra; fracture of lumbar vertebra and separation of sacro-iliac joint, resulting in pains, *272 physical disability, etc.; (3) activation of previous quiescent osteo-arthritis to the extent of almost complete loss of function of back, and spine with inability to carry on any substantial activities, with increasing pain; (4) the condition grows progressively worse."
However, the mental weakness suffered by her, as testified by her physicians, consists mostly of imaginary and exaggerated ideas of her own infirmities. No contention is made that she is incoherent or irrational other than as to the extent of her injuries, although her memory is bad. She was hospitalized for ten days following her injuries and then went home and stayed there for three or four months. It is of some significance that plaintiff was not placed in a cast, has never worn a brace or bandage, and no treatment has been prescribed for her, other than mild sedatives to relieve pain. Fortunately, despite the severity of the injuries to her spine, she is not entirely unable to attend to her personal needs and to attend to some of her affairs. While she lies down some part of each day, yet she now goes about her home and the streets of Baxter Springs, generally in company of others. She has been to Pittsburg, Kansas, and Joplin and Kansas City to consult physicians. Since June of 1947, she has gone regularly to Pittsburg, Kansas, to consult her physician, sometimes weekly and sometimes at intervals of two and three weeks.
In support of its contention that the verdict is grossly excessive, defendant relies strongly upon the case of Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W. 2d 390. In support of her contention that the verdict is not excessive, plaintiff relies strongly upon the case of Hoff v. Wabash Railway Co., Mo.Sup., 254 S.W. 874. Both cases are in some respects somewhat comparable to some of the facts in this case.
In the Hoff case the trial court reduced a verdict for personal injuries and damages to plaintiff's automobile from $41,500 to $20,000. Upon appeal, this court refused to further reduce the verdict. Some part of the verdict not exceeding $1500 was damages to plaintiff's automobile. The plaintiff's injuries in that case were quite similar to, but apparently more extensive than, plaintiff's injuries in this case. But there was one important distinction in that case: plaintiff was only sixty years of age. In this case plaintiff is seventy-two years of age and has a much shorter life expectancy.
In the Summa case this court reduced the verdict from $25,000 to $17,500. The injuries, as summarized in the opinion, 165 S.W.2d loc.cit. 396, were: "At the time of her injury the plaintiff was seventy-two years of age, with an expectancy of seven to eight years, and had received medical attention for arteriosclerosis and high blood pressure, though she earned fifteen to twenty dollars a week playing the piano for her daughter's dancing school. When the respondent fell her right hip was fractured, the fracture running through the neck of the femur with an upward displacement. A closed reduction of the fracture was unsuccessful and a ten inch incision was made and the bones were brought together by a Smith-Peterson nail. Subsequently the nail was removed and when her condition failed to improve it was found there was an infection and a necrosis at the head of the femur and she was again operated on and the infection removed. * * * After the last operation she developed an embolism, paralyzing her left side and though she had improved considerably there was some doubt as to the permanent effects of the paralysis. Her hip will be stiff and about one-half inch short. She was in the hospital about nine months and suffered great pain. Her hospital and medical bills at the time of the trial were $5,306.91 and she will require further medical attention."
While the injuries in the Summa case differ materially from those of plaintiff in this case, yet they may be said to be as painful and disabling. In that case plaintiff's medical expense was $5,306.91. Hence, the verdict, as reduced, was approximately $12,500 for her injuries.
The rule of reasonable uniformity of verdicts is a sound and desirable one, Cruce v. Gulf, Mobile & Ohio R. Co., supra, but at most it can only serve as a guiding principle, with only relative attainment of its purpose. When we consider *273 plaintiff's age, her life expectancy, her injuries and suffering, and present economic conditions, we are constrained to hold that the judgment of $20,000 is grossly excessive by at least $5,000.
If, therefore, plaintiff within fifteen days files remittitur of $5,000, as of date of the judgment, the judgment is affirmed; otherwise, it is reversed and remanded.
All concur.