Fern KELLEY, Administratrix of the Estate of John Lee Kelley, deceased, Plaintiff-Respondent

v.

Frank HUDSON, Defendant-Appellant.

No. 8458.

Springfield Court of Appeals.

Missouri.

Sept. 19, 1966.

Motion for Rehearing or to Transfer to Supreme Court Denied
Oct. 11, 1966.

Robert E. Seiler, Joplin, Seiler, Blanchard & Van Fleet, Joplin, of counsel, for defendant-appellant.

Jack P. Steinle, Aurora, for plaintiff-respondent.

COTTEY, Special Judge.

Plaintiff had judgment for damages for personal injuries allegedly suffered through defendant's negligence, and defendant appeals. It is not contended that the award was excessive; liability is the disputed issue. Pending the appeal plaintiff died and his administratrix has been substituted as respondent in his stead, but for convenience we shall continue to refer to him as plaintiff in the cause. We have concluded that a retrial must be ordered for reasons presently to be discussed, and it is therefore necessary to set out only the facts that serve to introduce that discussion.

Defendant's automobile and another in which plaintiff was riding as a passenger met at the crest of a hill on a narrow road while traveling at disputed speeds estimated from "50 or 55 miles an hour" to "70 or better." Each claimed that his vehicle was in its own proper lane of traffic, each claimed that his adversary's vehicle was partially across the center line in the wrong lane of traffic and that it continued to approach in substantially that position with no decrease in speed, and each claimed that by reason of the other's negligence in those particulars he had been obliged to veer from the traveled portion of the roadway in order to avoid the impending collision. A collision between the two vehicles was actually averted, but in the course of the maneuver plaintiff's automobile went out of control and overturned, injuring him.

The only eyewitnesses were the loyally partisan occupants of the two cars. The even balance of their contradictions spurred a quest by both sides for some corroborative circumstance, however slight, that might tip the scale in favor of the deserving litigant. The search centered around defendant's assertion that to meet the emergency created by plaintiff's encroaching car he had been forced to swerve off the pavement to his right, and had left tire marks on the shoulder and in the adjacent ditch to prove it. These, predictably, were clearly observed by defendant's witnesses,

but not a trace of them could be discovered by plaintiff's. Obviously, if their existence could be independently established, or, by the same token, convincingly disproved, the result would be a material aid to the jury in determining where the truth lay.

The logical arbiter of that dispute would have been the patrolman who inspected the scene of the accident shortly after the occurrence; but, unfortunately, he had died. Neither of the parties had been present when the officer's inspection was made, but both, in separate and private conversations at the hospital later that day, had told him their versions of the affair and he had thereafter made an official report which was in evidence. The report indicates that the trooper had treated the occurrence as a one-car accident, involving only the automobile in which plaintiff had been riding. That automobile, described as "Car #1," is the only one sketched on the diagram attached to the report; the marks left by it in the course of the gyrations that ended in its overturn are the only ones shown; its driver is the only one for whom any biographical data is listed, or from whom any recorded statement was taken; in the space provided for data on "Car #2" is written the word, "none"; and defendant's name appears in the report only as a "witness."

One might suppose that such a report, mute and blank insofar as the existence of the disputed tire marks was concerned, could hardly be construed as decisive of that question; but that would be to reckon without the ingenuity of counsel, for a demonstration of which we move forward the sequence of this account to plaintiff's closing argument. There plaintiff's counsel (not his counsel on this appeal, however), with the report in his hand, gave the jury this explanation of it: "If Frank Hudson's tire marks were out there at the scene of the accident, those marks would be on this report. * * * Ladies and gentlemen, the trooper was there at the scene, and if Frank Hudson's tire marks were there, those

marks would show up on this report. As I said before, I never saw a highway patrol report that didn't show the marks made by both cars if both cars made marks. * * * Let me tell you about this patrol report. This is important. If any skid or tire marks were there, regardless of who they were made by, they would show on this patrol report. If they were there at all, they would be shown on the report." At the conclusion of the argument the jury made express inquiry for the report and were permitted by the court to take it to the jury room, presumably for further study in the light of counsel's analysis. A ten-man verdict ensued.

The argument acknowledges the importance of the evidence that pointed and sharpened it. We attach the same importance to the method by which that evidence was shaped to its purpose. On direct examination defendant testified to the tire marks that tended to substantiate his version of the accident; but against the background of plaintiff's witnesses' flat denials, whatever he could have said on the subject was bound to be liable to the normal discount for bias and interest, and, as the argument discloses, only corroboration by the trooper could have dispelled the doubt and made his testimony acceptable to the jury at face value. The trooper's death precluded a direct approach to that problem; the hearsay rule barred any alternative. But counsel for plaintiff was not satisfied with the advantage which had thus accrued to his client. On cross-examination he set out to develop and enlarge it, both as it affected the disputed fact issue and as it might be brought to affect defendant's credibility; and this exchange of questions and answers ensued:

"Q. You stayed there at the hospital and talked to the trooper?

"A. Yes; when he came in the door I talked to him, and then later we sat down in the car and I talked to him.

"Q. And did you tell the trooper where your skid marks were out there at the scene of the accident?

"A. I told him some were there. They wasn't skid marks, but they was just tracks where I went off of the blacktop.

"Q. And you told him all about it?

"A. All about what? All about the marks?

"Q. Told him all about where you were when the two cars passed?

"A. Well, I asked him if he had seen any marks out there.

\*      \*      \*      \*      \*      \*

"Q. Frank, did you tell the trooper this other car was on your side of the road when you saw him, or when you met and passed him?

"A. No, I don't think so. He knew I had to get over—(interrupted).

"Q. The report does not show it. You never did, Frank, tell the trooper that this car was on the wrong side of the road?

"A. No, I don't really think so. My marks being there, it—(interrupted).

"Q. You did not tell the trooper that your car was on the wrong side of the road there that day?

"A. No, sir.

"Q. And he didn't see any tire marks made by your car out there, did he?

"A. Oh, yes, sir, he did. He—(interrupted).

"Q. And you told the trooper you didn't know if you were involved in the accident or not?

"A. That is right. I made no contact with the Kelley car."

By that interrogation the jury was invited to gather the true import of the conversation from one side of it only. On redirect examination counsel for defendant sought to supply the omission:

"Q. Mr. Moore asked you if the highway patrolman saw the marks from your car out there, and I will ask you if the highway patrolman stated—(interrupted)."

At this point plaintiff's counsel objected, apparently on the theory that whatever the patrolman might have said would be hearsay, although that ground was not specified. The objection was sustained and an offer of proof, that in the course of the same conversation the patrolman had stated to defendant that he had seen his tire marks on the shoulder of the highway at the scene of the accident, was rejected. That was error.

■■■■ One may not elicit from his adversary, to his own advantage, those parts of a conversation in which the adversary was the speaker, and then withhold from the jury, to his adversary's disadvantage, the responses of the other party to the conversation which fill out and explain the sense of it, even though such responses are hearsay. Half-truths and false impressions go often hand in hand, and the law eschews them both; hence the rule, that whenever an improper subject of inquiry has voluntarily been broached by one party, and such of its contents drawn off as serve to discredit the other or disparage his case, the relevant remainder may be examined, to the end that the sample produced may be more dependably analyzed in the light of the whole truth. 1 Wigmore on Evidence (3rd Ed.), § 15, l.c. 307; Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780, 785–786; Sigman v. Kopp, Mo., 378 S.W.2d 544, 547; Eddings v. Keller, Mo., 400 S.W.2d 164, 173; Corley v. Andrews, Mo.App., 349 S.W.2d 395, 403; Ramos v. Ramos, Mo.App., 232 S.W.2d 188, 198; 31A C.J.S., Evidence § 190, p. 509 et seq. The party who opens up the improper subject is held to be estopped to object to its further development, Larabee Flour Mills v. West Plains Com'n Co., 216 Mo.App. 257, 262 S.W.2d 389, 391, or to have waived his right to do so. Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859, 865. The applicability of the rule to cases in which

part of a conversation has been brought out and the remainder is offered is said to be "elementary." Schnurr v. Perlmutter, Mo.App., 71 S.W.2d 63, 67; Berry v. Adams, Mo.App., 71 S.W.2d 126, 134; Rodgers v. Schroeder, 220 Mo.App. 575, 287 S.W. 861, 864; 88 C.J.S., Trial, § 116, p. 236. And the denial of the right prescribed by the rule, when it results in substantial prejudice to the party deprived of it, exceeds the allowable bounds of judicial discretion and is reversible error. Dorn v. St. Louis Public Service Co., supra, 250 S.W.2d at 865–867; Young v. Dueringer, Mo.App., 401 S.W.2d 165, 167–168. We think that is the case here. The rule was violated, and the prejudice resulting to defendant from the exclusion of his proffered evidence was manifest and material; the offer shows it, the argument confirms it, and the ordinary understanding of fair play admits of no other conclusion.

The search for a corroborative detail, having led to one error, led then to another. Plaintiff had submitted to a physical examination at the hands of a doctor selected by defendant, and some reference to the fact was made in the course of plaintiff's testimony. Defendant did not call the doctor. His failure to do so was a permissible subject of argumentative comment, of course, insofar as it tended to confirm plaintiff's own appraisal of his injuries. Hamilton v. Ross, Mo., 304 S.W.2d 812, 816. But in his closing argument counsel marked up the value of the incident considerably beyond its legitimate worth. He said (italics ours):

"Now there was evidence that the plaintiff, Lee Kelley, will suffer some ill health the rest of his life as a result of this accident, and the defendant's lawyers had Lee examined by their doctor; but why would they have him examined by their doctor to try to show he wasn't hurt * * * *if they were not worried about Frank Hudson being at fault;* and they would have you believe—(interrupted).

"Mr. Seiler: We object. This is not proper argument.

"The Court: Overruled.

"[Counsel, continuing]: Why would they have Lee Kelley examined by a doctor of their choice if they weren't worried about Frank Hudson being at fault for this accident, or at least partially at fault? Don't let them make you think he didn't have anything to do with this accident, but that he was just a Good Samaritan in going back."

Counsel for plaintiff on this appeal quite frankly says, "Little effort will be made here to defend the merits of the argument." But the censure of it implicit in that concession is, in our opinion, indulgently mild. Defendant had every right to avail himself of the opportunity of having plaintiff examined by a doctor of his own choice; prudence suggests it and practice approves it as a legitimate step in the pre-trial preparation of every personal injury action. But it is a step that is always and exclusively directed to the issue of damages; and never nor possibly can it reflect on the issue of liability. By no stretch of imagination can it be construed as an admission of "fault," or a "worry" about being at fault. To imply the contrary is to misrepresent the fact and mislead the jury. We gather that plaintiff's counsel concedes as much, at least tacitly; but he advances two propositions that must be disposed of before the point can be ruled:

■ 1st: That the argument was in reply to, and in retaliation for, a preceding argument by counsel for defendant in which he characterized his client as a "Good Samaritan." This, on the strength of defendant's testimony that after the two automobiles had cleared each other and he had proceeded on his way, he glanced in his rear view mirror, saw plaintiff's car "skidding across the highway just over the crest of the hill," apprehended that it might be out of control, turned back to investigate, found the wreck, assisted in removing plaintiff from it, and drove him to the hospital. Counsel capitalized those facts, declared some dividends in the way of inferences from them, and entered the profit to the

credit of the Good Samaritan. Whether the precept of the parable exactly fits the case is not of prime concern. Certain and obvious it is that counsel's reference to his client as a Good Samaritan no more amounted to an admission of "fault," and no more invited retaliation on that head, than did the ministrations of the Samaritan himself to the victim of the thieves' depravity.

■■■■ 2nd: That no sufficient objection was made. It is true that the objection was as general as one can well be.[1] Without presuming to formulate a rule that either has been, or ought to be, followed in every instance, it may nevertheless not be amiss to analyze the decisions of the courts in the three sets of circumstances in which this problem has arisen, from which it will be found: (a) that where *no* objection was made, it has usually been held that nothing was preserved for review, Enyart v. Santa Fe Trail Transp. Co., Mo., 241 S.W.2d 268, 270; Kuehn v. Hahn, Mo., 380 S.W.2d 445, 451; Clark v. McKeone, Mo., 234 S.W.2d 574, 577; O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904, 907; Birmingham v. Coen, Mo., 320 S.W.2d 509, 510; Reger v. Nowotny, Mo., 226 S.W.2d 596, 598; (b) that where a mere general objection was made, the trial court's discretion in disposing of it has usually not been disturbed, Hancock v. Crouch, Mo.App., 267 S.W.2d 36, 44–46; Donley v. Hamm, Mo., 98 S.W. 2d 966; Williams v. Thompson, Mo., 251 S.W.2d 89, 93; Propst v. Capital Mut. Ass'n., 233 Mo.App. 612, 124 S.W.2d 515, 525; Ternetz v. St. Louis Lime & Cement Co., Mo., 252 S.W. 65, 71; Collins v. Cowger, Mo., 283 S.W.2d 554, 560–561; Lindsey v. P. J. Hamill Transfer Co., Mo.App., 404 S.W.2d 397, 399–400; but (c) where the argument was so palpably unfair as

presumptively to have fostered a miscarriage of justice, a general objection has usually been held sufficient to alert the trial court to the error and preserve it for review. Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 428; Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454, 458; Leaman v. Campbell, 66 Exp. Truck Lines, 355 Mo. 939, 199 S.W.2d 359, 366; Williams v. Columbia Taxicab Co., Mo.App., 241 S.W. 970, 972–973; Monroe v. Chicago & A. R. Co., 297 Mo. 633, 249 S.W. 644, 646; Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 813–815. The latter principle is the one we invoke here. It seems to proceed from the premise that where the argument can have no conceivably proper purpose, and is obviously false and manifestly prejudicial upon every consideration and for every reason, it would be labor lost to require a technically precise objection to it; indeed, to insist upon it in those circumstances, and to let the event of the lawsuit abide it, would surely provoke the Scriptural rebuke of straining at a gnat and swallowing a camel. And, having ruled that the objection in this case was as sufficient for the purpose as though it had been "squarely made," we are constrained to rule that it was unnecessary to repeat it seconds later when counsel, encouraged by the court's approval of the offending statement, gave the jury a stinging repetition of it; this, by analogy to cases dealing with the same point in matters of evidence. Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 648–649, 157 A.L.R. 598; Borgman v. Boten, Mo.App., 225 S.W.2d 360, 362.

In this court the case has been briefed and presented on both sides with a degree of professional *skill that merits*, and here receives, our forthright commendation.

---

1. Submitted with the transcript is an affidavit by defendant's counsel asserting that his objection was considerably more detailed, but that through error in the stenographic notes of the trial his specifications were omitted. A counter-affidavit, disputing the omission, has been filed by plaintiff's counsel. We may not notice either. Hendershot v. Minich, Mo., 297 S.W.2d 403, 410; Pretti v. Herre, Mo., 403 S.W.2d 568, 569.

For the reasons assigned, the judgment is reversed and the cause remanded for a new trial.

STONE, P. J., and HOGAN, J., concur.

TITUS, J., not participating because not a member of the Court when the cause was submitted.