Ray LAWRENCE and Elizabeth Lawrence, Appellants,

v.

Wilbur WINDSOR, Respondent.

No. WD 36012.

Missouri Court of Appeals, Western District.

June 18, 1985.

Hilda N. Petri, Columbia, for appellants.

Rodric A. Widger (argued), Eugene E. Andereck, Jefferson City, for respondent.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

NUGENT, Presiding Judge.

Plaintiffs, Ray and Elizabeth Lawrence, filed suit for injuries Mr. Lawrence incurred while shoeing defendant's horse. The court directed a verdict for defendant on plaintiffs' Count I, which charged that defendant kept a horse with a dangerous propensity. Count II, a negligence theory, was submitted to the jury which found in favor of defendant. Plaintiffs complain of the court's direction of the verdict on Count I, of defense counsel's closing argument, of the court's refusal to grant them a new trial on Count II, and that the verdict was against the weight of the evidence. We affirm.

Plaintiff Ray Lawrence is a blacksmith with over twenty-five years experience. He was hired in May, 1980 by defendant Wilbur Windsor, a farmer and horsebreed-

er, to trim the hooves on several of his horses.

Mr. Lawrence arrived at the Windsor farm on the morning of May 13, 1980. Defendant's employee, Russ Richards, brought out the horses that were to be trimmed. Mr. Lawrence trimmed three horses and began work on a fourth, Dream Star of Windsor. The horse became fidgety after three of its hooves were trimmed, and the plaintiff stopped for his lunch break. After lunch, he began work on Dream Star's fourth hoof. While he was trimming that hoof, Russ Richards told him that the horse had previously kicked someone. Plaintiff testified that "[i]t wasn't very long and she kicked me." The horse kicked him in the head knocking him to the ground and had to be stopped from kicking him a second time. Defendant Windsor testified that the horse had kicked at another employee sometime before plaintiff was kicked.

Plaintiffs did not file suit until September 16, 1982, twenty-eight months after the occurrence. Before suit was filed Russ Richards was killed in an accident.

Plaintiffs sought recovery on three theories: First, Dream Star was an animal with a dangerous propensity to kick and defendant knew of that behavior. Second, defendant was negligent in failing to warn plaintiff of the horse's propensity. Third, defendant's agent was negligent in controlling the horse while plaintiff did his work. Mrs. Lawrence sought recovery for loss of her husband's services and consortium because of the occurrence.

At trial, plaintiffs used as an expert witness Alice Thompson, sister of plaintiffs' attorney. She testified that Russ Richards' manner of controlling the mare during the trimming was improper. Defendant called Wilbur Leonard, a saddle horse trainer who had shod horses for Alice Thompson, to rebut her testimony. He testified that he had seen Alice Thompson repeatedly controlling horses in a manner different from the way she testified was the proper way to control the animals.

At the close of plaintiffs' evidence, the court directed a verdict for defendant on plaintiffs' Count I on the ground that plaintiffs had failed to show the mare's "vicious propensity or tendency to injure persons" without provocation. Nevertheless, the court refused to admonish the jury to disregard evidence concerning the viscousness of the animal, leaving the matter to the instructions and closing argument.

Plaintiffs' negligence count was submitted to the jury. In his summation, defense counsel argued that plaintiffs' expert witness, Alice Thompson, was not truthful, alluding to the testimony of Wilbur Leonard that he had seen Alice Thompson repeatedly controlling a horse in a manner different, according to her trial testimony, from the proper manner of control. Defendant's counsel also argued that if plaintiffs had had a valid claim they would have filed suit right after the occurrence and before Russ Richards died. In addition, defense counsel argued that the court had "kicked" Count I out of the case, saying, "The judge ruled there is no evidence of a vicious horse." (On this appeal, plaintiffs' counsel argues that in making the last such argument defense counsel placed great emphasis on the court's having directed the verdict, asserting that he had used "strong and even vulgar language, greatly cleaned up by the court reporter in making the transcript." We are not told what that language was.) Plaintiffs' attorneys made no objection at trial to any of those arguments. The jury found in defendant's favor, and the court denied plaintiffs' after trial motions.

## I. *Directed Verdict*

■ Plaintiffs' first point concerns the court's direction of the verdict in defendant's favor on their first count. In deciding whether the court erred in granting defendants' motion, we view the evidence in a light most favorable to plaintiffs, giving them the benefit of all reasonable inferences, disregarding defendant's evidence except as it may aid plaintiffs' case. *Grossman Iron & Steel Co. v. Bituminous*

Casualty Corp., 558 S.W.2d 255, 258 (Mo. App.1977).

Plaintiffs' theory under Count I was that defendant kept an animal with a dangerous propensity to kick after he had knowledge of that propensity. Plaintiff has the burden of proof to show the animal's dangerous propensity and defendant's knowledge of that behavior. *Boyer v. Callahan*, 406 S.W.2d 805, 809 (Mo.App.1966); *Maxwell v. Fraze*, 344 S.W.2d 262, 265 (Mo.App.1961). Plaintiffs' evidence considered in a light most favorable to their case only shows that Dream Star had kicked one person before this occurrence. They did not show the extent and surrounding circumstances of the prior incident. To make a prima facie case, plaintiffs had to show more than just the one earlier kick. In addition, they had to show the extent and surrounding circumstances of the earlier occurrence. *Id.* Plaintiffs failed to make that showing and the court correctly directed the verdict against them. Plaintiffs go on to argue that the animal's dangerous propensity was also shown by the fact that the horse tried to kick Mr. Lawrence a second time. Evidence of the second kick, however, has little or no relevance or probative value when plaintiffs' burden is to show an earlier kick and defendant's knowledge of the horse's dangerous propensities.

■ Plaintiffs also argue that the court's entry of the verdict relieved defendant of having to show provocation for the earlier kick. The defendant had no burden in this case to show provocation since provocation only serves to rebut plaintiffs' prima facie case. *Sayers v. Haushalter*, 493 S.W.2d 406, 408 (Mo.App.1973). Plaintiffs failed to make even a prima facie case.

## II. *Defendant's Closing Argument*

■ Plaintiffs next contend that the verdict for defendant should be reversed and that they should be granted a new trial because defense counsel in his summation argued that the court found no evidence that Dream Star was a vicious animal. Plaintiffs' attorney failed to object and nothing is preserved for our review. *Hen-*

*sic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 525 (Mo.App.1980). We are not persuaded that the argument was plain error because none of the evidence indicated that the mare was of vicious propensity and because counsel's statement was accurate, and we affirm that decision here. Plaintiffs also contend that defense counsel used foul language in his argument on this point but the record does not reveal that counsel used such words.

■ Plaintiffs further argue that counsel's argument that plaintiffs' chief expert witness was not truthful warrants reversal and a new trial. Once again, plaintiffs' attorney did not object to the argument, and the point is not preserved for our review. *Id.* Defendant did impeach the credibility of the witness by the testimony of defendant's own witness. We see no manifest injustice in the argument that the witness was not truthful when she had been impeached. *See,* Rule 84.13; *Blevins v. Cushman Motors*, 551 S.W.2d 602, 616 (Mo.1977) (en banc).

■ Defendant's attorney also argued that if someone had a valid claim they would have brought suit right after the occurrence and not waited several years and until after the only other eye-witness to the incident, Russ Richards, had been killed. Once again, plaintiffs' attorney failed to object but now claims that the argument is plain error.

Although defense counsel was correct in saying that suit had not been filed until after Mr. Richards' death, the evidence does not indicate that plaintiffs waited to bring their suit in the hope that Russ Richards would be killed. Any number of ligitimate reasons might account for plaintiffs' delay in filing suit, but waiting for the accidental death of the only eyewitness is not likely be one of those reasons. Defense counsel did not imply what Mr. Richards' testimony would have been, but we see nothing in the record to indicate it could have damaged plaintiffs' case. Mr. Windsor admitted that Dream Star had kicked at someone before, and he does not

contest that Mr. Richards warned plaintiff of the prior incident. In light of the facts known to the jury, defense counsel's argument was unlikely to have influenced the jury or to have caused a miscarriage of justice requiring reversal and a new trial. *See*, Rule 84.13; *Blevins v. Cushman Motors, supra,* 551 S.W.2d at 616.

Plaintiffs rely upon *Leaman v. Campbell 66 Express Truck Lines, Inc.,* 355 Mo. 939, 199 S.W.2d 359 (1947). In that case, plaintiff filed suit for the wrongful death of his wife caused by a collision with defendant's vehicle. The court found plain error where defendant's counsel implicitly argued that the driver of the plaintiff's car was drunk, that the driver was going to bring his own suit, and that plaintiff did not file in his home county because of his bad reputation there. No evidence supported any of those implications, and the court found them highly prejudicial. *Leaman* is inapposite here since the implications in *Leaman* could have persuaded the jury. Here, the argument that plaintiffs had deliberately delayed filing suit is so unlikely to have moved the jury that we cannot find a miscarriage of justice. *Id.*

### III. *Duty to Warn*

▪ Plaintiffs' next point is that the court erred in not granting them a new trial because the verdict is not in accord with the law.

Plaintiffs argue that defendant had a duty to warn Mr. Lawrence of Dream Star's dangerous propensity to kick in time for plaintiff to avoid the incident. They rely upon *Heald v. Cox,* 480 S.W.2d 107, 110 (Mo.App.1972), where the court held that the defendant had a duty to warn plaintiff of defendant's horse's dangerous proclivity to buck. But in *Heald* the evidence was sufficient to show the dangerous proclivity whereas here plaintiffs have not presented sufficient evidence of Dream Star's dangerous tendencies.

Moreover, Russ Richards, defendant's employee, did warn plaintiffs of the earlier kick. Mr. Lawrence testified that he was kicked soon after the warning. His attorney then asked him if he had time to do anything after the warning. Defendant ob-

jected and the court sustained the objection. Plaintiff does not complain of the ruling. Based on the evidence, the jury could have concluded that Mr. Lawrence had been given an adequate warning.

### IV. *Verdict Against the Weight*

▪ Plaintiffs' next contend that the verdict was against the weight of the evidence. Whether or not a verdict is against the weight of the evidence is a determination solely for the trial court. *Mayfield v. Metropolitan Life Insurance Co.,* 585 S.W.2d 163, 164–65 (Mo.App.1979). The trial court ruled against plaintiffs on the point, and we do not weigh the evidence. *Id.*

### V. *Comparative Negligence*

The Lawrence's final point is that the jury failed to consider the law of comparative negligence in its verdict. The verdict forms used by the jury allowed the jury to assess a percentage of the fault to the parties. Nevertheless, the jury found that the defendant was not at fault. We do not see how the jury's consideration of the law of comparative fault would have aided plaintiffs since it found defendant not liable.

For the foregoing reasons, the judgment is affirmed.

All concur.