247 S.W.2d 652 (1952)
LOUIS STEINBAUM REAL ESTATE CO. et al.
v.
MALTZ et al.
No. 42882.
Supreme Court of Missouri, Division No. 1.
March 10, 1952.
Rehearing Denied April 14, 1952.
*654 Joseph Boxerman, St. Louis, for appellants. Joseph Nessenfeld, St. Louis, of counsel.
Alvin A. Wolff, St. Louis, for respondents.
COIL, Commissioner.
This is an appeal from a judgment entered upon a verdict of a jury in favor of defendants in plaintiffs' suit for $1,260 actual and $10,000 punitive damages, averred to have accrued because of alleged fraudulent representations by defendants in connection with the sale of real estate.
Defendants owned jointly a six-story building at 912 North Sixth Street, St. Louis. Plaintiffs, two corporations engaged in the real estate business, were prospective purchasers for this property which defendants had listed for sale with the Edward L. Bakewell Real Estate Company through its salesman, Mr. Boenig. It was represented to plaintiffs by defendants through their agent on information supplied by defendants that the 6th floor was occupied by a certain company at $90 per month rent under a lease which would expire November 14, 1949. It is not disputed that on September 10, 1948, when the sale was consummated, the 6th floor was unoccupied and had been unoccupied since approximately September 1, 1948; that there was no valid existing lease of the 6th floor; and that there had not been such a lease in existence since November 14, 1947, although the former lessee had occupied the 6th floor from the expiration of its lease on November 14, 1947, until approximately September 1, 1948, as a month to month tenant.
We shall discuss the evidence further as necessary in connection with a consideration of plaintiffs' contentions.
Because of our conclusion that the judgment must be affirmed, it is unnecessary to discuss defendants' contention that plaintiffs failed to make a submissible case; although our examination of the record convinces us that this contention is without merit.
Plaintiffs contend that the court erred in permitting cross-examination as to immaterial and prejudicial matters, in permitting improper argument to the jury, and that the cumulative effect of allegedly prejudicial incidents prevented plaintiffs from receiving a fair trial.
Of these in order. Theodore Gitt, a real estate broker whose firm was one of the plaintiffs, testified on direct examination that after this property was purchased by plaintiffs he, on their behalf, discovered that the 6th floor was vacant; that there was no valid existing lease pertaining to it; that it had been vacant since the former occupant had moved; and that "It is vacant as of right now." The following then occurred:
"Q. Will you state whether or not you made any effort to secure a tenant for that particular floor? A. The Wiesels Company, who specialize in that type of rental, management, commercial and industrial, managed the property and tried and negotiated and did everything they could to get a tenant.
"Q. And will you state whether or not they were unable to obtain a tenant? A. They were unable to get a tenant."
On cross-examination Mr. Gitt was asked: "Q. As a matter of fact, you never attempted to, from in September of 1948, attempted to get a tenant for the sixth floor, did you?" Objection, by the same counsel who had just examined the witness on direct examination, that the question did not call for evidence bearing upon the issues in the case was overruled and the witness answered that the Wiesels *655 Company managed the property. The witness was then asked if he personally attempted to get a tenant for the 6th floor and he said he hadn't until after the lease was supposed to have expired, that is, after November 14, 1949, and again said that prior thereto the Wiesels Company had attempted to find a tenant.
Plaintiffs say that the court erred in permitting this cross-examination. The record above demonstrates that this contention is not tenable. We need not further discuss it other than to say that certainly defendants' counsel had the right to cross-examine Mr. Gitt as to the exact matters to which he testified on direct examination. 70 C.J., Witnesses, § 810, p. 642.
On cross-examination, Mr. Gitt testified that the plaintiffs' purpose in buying this property was to resell it at a profit. He first testified that plaintiffs still owned the building and then said they had sold it. When Mr. Gitt was asked when the property was sold, counsel for plaintiffs objected on the ground that the testimony called for was irrelevant to any issue. The court ruled that the evidence was admissible for whatever light it might throw on the question of the value of the property at the time of sale to plaintiffs. Then, over the objection of plaintiffs' counsel, it was developed that in not more than two weeks after plaintiffs purchased, they sold the building for $31,000 in the same condition in which it was at the time they bought it. The resale was for $6,000 cash and, apparently, a first deed of trust for $25,000. The court specifically admonished the jury that this testimony was admissible only in so far as it might tend to show the value of the property at the time of sale to plaintiffs.
Plaintiffs contend that this evidence was wholly immaterial to any issue in the case and was highly prejudicial because it eliminated from the jury's consideration the "benefit of the bargain" rule. The gist of plaintiffs' argument is that the measure of damages is the difference between the value of the property as represented and the actual value of the property at the time of sale; that evidence of a subsequent advantageous disposition of property is not admissible to disprove damages under the "benefit of the bargain" rule. We agree with these principles of law, but do not agree that the application of these principles made inadmissible the testimony in question.
It is true that in an action for damages for fraud and deceit the purchaser, having elected to retain the property, may recover damages measured by the difference between the value of the property as represented and the actual value of the property at the time of sale; and it is also true that this rule enables the purchaser to recover the so-called "benefit of his bargain". McFarland v. Cobb, Mo.Sup., 64 S.W.2d 931, 935[15] [16]; Menke v. Rovin, 352 Mo. 826, 835[6], 180 S.W.2d 24, 27[13]; Wolfersberger v. Miller, 327 Mo. 1150, 1165, 1166, 39 S.W.2d 758, 765[15]. It follows that a resale by the purchaser, even at a price which enables him to realize an overall profit on the transaction, does not affect the measure of damages, i. e., damages are not decreased because of a subsequent advantageous disposition.
This does not mean, however, that evidence which is competent and relevant on the question of value at the time of sale is not admissible because such evidence may also disclose that the purchaser sold for a greater price than he paid. There was evidence in this case from which the jury could find that plaintiffs resold this property on the same day they purchased it and that the resale was made to another real estate company. Certainly, the price which another real estate company paid for the identical property on the very same day plaintiffs bought it is persuasive evidence, or at the very least some evidence, which tends to throw light upon the value of the property at the time of sale to plaintiffs. The evidence as further developed showed that the resale was made on plaintiffs' representation that the 6th floor was occupied under a lease. Consequently the resale price of $31,000 turned out to be evidence of the value of the property as represented by defendants. If the evidence had *656 shown that the resale price of $31,000 was paid by plaintiffs' vendee with knowledge of the facts as to the 6th floor, then the resale price would be some evidence of the actual value of the property at the time of sale by defendants to plaintiffs. Mr. Gitt testified that when plaintiffs bought, the actual value of the property was $24,500 and that the represented value was $27,500, the price paid by plaintiffs. Thus, the evidence of the resale price, under the circumstance that the resale was made upon the same representations as to the 6th floor, was evidence which tended to increase the value of the property as represented to $31,000 instead of $27,500, and thereby tended to increase the amount of plaintiffs' damages.
The principle which determines the admissibility of the fact of resale and the resale price is whether those facts throw light upon the value of the property at the time of the transaction in question, i. e., at the time plaintiffs purchased. 37 C.J.S., Fraud, § 147(1) and (2), pp. 491-493; McFarland v. Cobb, supra, 64 S.W.2d 934 [12, 13]; Singman v. Kotsrean Realty Co., Mo.App., 107 S.W.2d 196, 199[7]; School Dist. of Clayton v. Kelsey, 355 Mo. 478, 484, 196 S.W.2d 860, 863[4,5].
There may be situations in which the fact of resale and the resale price would not throw light upon value at the time of a particular transaction. The resale might be so remote in point of time, or the condition of the property might have been so changed, or economic conditions might be so different, as to make the fact of resale and the resale price of no probative effect as evidence on the question of value. In the instant case the evidence was material. The fact that plaintiffs purchased for cash and resold for cash and a note secured by a deed of trust does not destroy the probative value of the evidence. As it developed, this evidence was advantageous to plaintiffs because it tended to increase the amount of their damages. Plaintiffs' contention that the real purpose of the evidence was to show the fact of an overall profit cannot avail. Evidence admissible for one purpose is not excluded because inadmissible for another purpose. Scott v. Missouri Ins. Co., 361 Mo. 51, 59, 233 S.W.2d 660, 665[9]. Furthermore, despite the absence of a request therefor, the trial court did clearly limit the jury's consideration of this evidence to the issue of value.
Plaintiffs also contend that the court erred in permitting certain argument to the jury by defendants' counsel because it "was contrary to the material evidence, and was so improper and inflammatory as to deprive plaintiffs of a fair trial by an unbiased jury", and because "The prejudicial argument misstating the law was sanctioned by the Court". The record shows, and plaintiffs concede, that none of the argument now urged as improper was objected to at the time made, and it was not objected to out of the hearing of the jury at the close of the arguments, nor were further instructions requested subsequent to the argument to clarify or further explain any applicable principles of law which plaintiffs' counsel may have believed had been misstated in the argument by counsel for defendants.
Plaintiffs contend that this is a case which calls for the invocation of our Rule 3.27 which provides that plain errors, though not properly raised or preserved, may be considered when the appellate court deems that manifest injustice or miscarriage of justice has resulted from the errors. We have examined carefully each portion of the argument here attacked and the statement made by the court during the argument. It is crystal clear that we may not say that manifest injustice or a miscarriage of justice resulted from either the argument or the court's statement. A brief review of the argument now objected to will demonstrate the propriety of this conclusion, and it will also show that in most instances the argument, in the absence of objections, probably was legitimate because based upon the evidence.
It is contended that counsel improperly argued that plaintiffs had realized a profit of $3,500 and thus had sustained no loss; that the reason plaintiffs bought the property was because plaintiffs had already sold it at a $3,500 profit; and that even after refund of $1,260 there was still a profit. (Plaintiffs' evidence showed that they had *657 refunded $1,260 to their vendee when the facts as to the 6th floor were discovered; and that if during the term of the represented lease any income was derived by their vendee from the 6th floor, plaintiffs would receive such income up to the amount of $1,260). An examination of the entire argument demonstrates that defendants' counsel had called attention to that part of plaintiffs' instruction which required the jury to find that plaintiffs believed defendants' representations as to the 6th floor, that they were deceived thereby and were as a result damaged; he then pointed out that plaintiffs had bought the property for $27,500 and had sold it for $31,000. It is true that an overall profit realized by plaintiffs would not, of itself, diminish their damages and any argument to that effect was not proper. But when these statements are considered in connection with counsel's contention that the real reason for the purchase of the property was not defendants' representations as to the 6th floor but solely because plaintiffs had already sold for a profit, it may not be said that the statements attacked did not have some bearing upon this contention. There was evidence from which the jury could infer that the resale by plaintiffs had been contracted prior to the closing of their purchase from defendants. Thus the argument that the property was not bought because of any representations, but because a profit was to be realized.
Objection is made to the argument of defendants' counsel that plaintiffs were in the real estate business and had an extensive business. This argument may have related to the question of whether plaintiffs in fact knew that there was no existing lease on the 6th floor and that it was unoccupied. There was evidence from which the jury could infer that plaintiffs had knowledge of the facts as to the 6th floor. It was, therefore, proper for counsel to argue that the fact that plaintiffs were experienced in real estate could be considered by the jury on the question of whether plaintiffs knew about the 6th floor as a result of their investigation before purchase and thus did not act in reliance upon any representations by defendants.
Objection is made to the argument that defendants trusted and relied upon their real estate agent who, defendants' evidence showed, handled the entire transaction for defendants. This argument was proper on the question of defendants' malice (instructions 2 and 3) in misrepresenting the facts as to the 6th floor as it related to the issue of punitive damages.
Objection is made to the argument that Mr. Gitt did not make a personal effort to obtain a tenant for the property after the purchase. This argument must be considered in connection with defendants' counsel's contention that the jury should not believe that the $1,260 refund by plaintiffs to their vendee was a legitimate transaction; and in connection with the argument that the instant suit had been filed within a few days after the resale. Defendants' counsel could legitimately argue that Mr. Gitt's failure to attempt to get a tenant was a circumstance which gave color to counsel's contention that there was a scheme between plaintiffs and their vendee to collect damages from defendants.
Plaintiffs' final objection is that the argument with reference to the closing statement at the time of sale, to the effect that plaintiffs' witness Gitt was there and fixed up the closing statement, together with the question: "How do I know or how do we know what the changes were?", was not supported by the evidence. It is true that the evidence does not show that Mr. Gitt made any changes in the closing statement, but the evidence does show, as counsel stated in his argument, that Mr. Gitt testified that he and Mr. Bakewell were there at the closing of the transaction and that some changes either had been made or were to be made in the statement at that time. Conceding that the argument as to Mr. Gitt having made some change was not justified by the evidence, it was not such as, standing alone and in the absence of any objection whatever, constituted a prejudicial argument sufficient to call for review under our Rule 3.27.
At one time during his argument, defendants' counsel was ascribing a certain meaning to language in an instruction. *658 Plaintiffs counsel objected on the ground that the argument was a misstatement of the law. The court said: "Well, the jury understands that they are to be guided by the evidence from the stand and the instructions, and not what counsel say the evidence is. The purpose of counsel's argument is to analyze the evidence and the instructions, and insofar as you may disagree with either counsel you are bound by the evidence and the instructions of the Court." No objection was made at the time, no objection was made at the close of the argument, and the matter was not specifically set forth in the motion for new trial. While part of the court's statement may be technically incorrect in that the jury is bound by the evidence and the instructions, irrespective of whether they agree with a counsel's analysis of them, nevertheless, the statement is inaccurate only upon close analysis and certainly it is not one calculated to, or which would be likely to, mislead a jury.
We have, perhaps unnecessarily, lengthened this opinion to specifically detail the portions of the argument and the remark of the trial judge which plaintiffs contend demonstrate that manifest injustice or a miscarriage of justice resulted. In some instances we have found the argument proper; in others we have indicated that it was probably legitimate. But even if it be assumed that each portion of the argument objected to was improper, and even if we assume that the remark of the trial judge was a technically incorrect statement of the law, still we may not say that manifest injustice or a miscarriage of justice has resulted. Generally, where timely objection is not made below, objection on review comes too late. Enyart v. Santa Fe Trail Transp. Co., Mo.Sup., 241 S.W.2d 268, 270, 271. The argument in this case is not comparable to those considered in Leaman v. Campbell 66 Exp. Truck Line, Inc., 355 Mo. 939, 199 S.W.2d 359, and Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405. In those cases the arguments were such as to call for the invocation of our Rule 3.27. We may not properly invoke Rule 3.27 in this case.
Finally, plaintiffs contend that a series of five or six trial "incidents" materially prejudiced them, and that their cumulative effect prevented a fair and impartial trial. Only two of the "incidents" are properly preserved for appellate review, and this, only by construing general allegations in the motion for new trial as covering them. Counsel must in the motion for new trial call to the attention of the trial court the errors which it is claimed were committed. If the matters complained of after trial were not objected to with reasons for the objection stated at the time of objection (or if objected to at the time and the court took the action requested), such matters must be specifically set forth in the motion for new trial. Supreme Court Rule 3.23 and RSMo 510.210, V.A.M.S.
The first of the two "incidents" involves the failure of the court to reprimand defendants' counsel. On direct examination Mr. Gitt was asked:
"Q. And will you state whether or not you then proceeded to close this deal and pay for the property without having obtained the leases? A. I don't know if I am supposed to say this.
"The Court: You can say anything that was said there; not any conclusion.
"The Witness: I had a contract stating that there were three leases; I had a statement showing that there were three leases, and all the rents paid in advance, so I closed the deal, figuring that he would bring in the three leases, that I was protected, and that there wasn't any question that there were leases. Now, what was the question again?
"Mr. Wolff (Defendants' counsel): If the Court please
"Mr. Boxerman (Plaintiffs' counsel): I believe you answered it.
"Mr. Wolff: This witness seems to be pretty well primed. Now, Your Honor, please, he makes a speech and then asks what the question was.
"The Witness: I am only trying to tell what happened, Your Honor.
"Mr. Wolff: Just answer the questions, Mr. Gitt.
*659 "The Court: You see, Mr. Gitt, if you just answer the questions, it will be better. Mr. Boxerman is very capable, he will bring out the points. You will have to rely on him.
"Mr. Wolff: I ask that the latter answer be stricken and the jury instructed to disregard it.
"The Court: Not all of it. The part where he said he relied on getting the leases may stand. The prefaces, that he had a statement and contract, that will be stricken and the jury instructed to disregard itthat is in evidence and could be further gone into by the introduction of the contract.
"Mr. Boxerman: I believe that counsel should be reprimanded for his statement he made here about this witness. I don't think there is any truth in that statement.
"The Court: Well, I will not reprimand counsel. I think both counsel are very estimable gentlemen. Will you proceed and go on?
"Q. (By Mr. Boxerman): Mr. Gitt, did you close the deal then, at the bank, without having seen the leases? A. Yes."
Plaintiffs say that the effect of the remark that the witness was "pretty well primed" was emphasized by the statement of the court that both counsel are estimable gentlemen, and that the court's statement in effect vouched for the character of defendants' counsel and led the jury to believe that the court agreed with the remark of defendants' counsel.
The record above set forth affirmatively discloses that the entire incident was minor and one typical in the "give and take" of trial. Of course, the remark that the witness seemed to be pretty well primed was uncalled for, but clearly the court's refusal to reprimand counsel was not an abuse of discretion. The trial judge correctly thought and stated that both counsel are estimable gentlemen and nothing in the entire incident even suggested that the court intended to express agreement with anything said by defendants' counsel. There is no merit in this contention.
The other "incident" relates to the testimony of defendant Bernard Maltz. Plaintiffs' counsel was inquiring concerning the leases on the Sixth Street property and developing the fact that they were not delivered to plaintiffs before the purchase, but that an arrangement had been made between this witness and Mr. Gitt whereby the leases would be delivered to Mr. Gitt at a later time. The following occurred:
"Q. What was said with respect to getting them to him? A. Whenever he would be in his office, he could call me and I would drop them off.
"Q. Did you receive a call from him? A. Not that day.
"Q. When did you receive a call? A. The next day.
"Q. About what time of the day was that? A. Oh, about three o'clock.
"Q. Did you deliver them that day? A. That evening.
"Q. Did you deliver any other papers? A. A $41,000 appraisal by Wenzlick with this
"Mr. Boxerman (plaintiffs' counsel): I move that thatjust a momentI move the latter part of the answer be stricken and the jury instructed to disregard it.
"The Court: That may be stricken, the jury instructed to disregard the last statement of the witness.
"Mr. Boxerman: Come up here, please.
"(At the bench, outside the hearing of the jury:)
"Mr. Boxerman: Your Honor please, I think that latter statement was made by counsel, by the witness, that he delivered an appraisal on this property of $41,000.00 made by Wenzlick, was intentionally injected into the answer by this defendant, highly prejudicial, and I am going to move that the jury be discharged."
The court did not discharge the jury but indicated to counsel that he was going to specifically instruct the jury to disregard that answer. And the court did instruct the jury that an objection to the question had been sustained and that they would disregard *660 the answer about another appraisal. He stated:
"The record may show that the motion (to discharge jury) is overruled, but the objection to the question is sustained, and members of the jury, the Court has held incompetent any other appraisal other than people who come in here and testify, and where the other side has a right to cross-examine him; and, you will disregard, if you will please, the last statement of this witness as to the amount of the appraisal; that if Mr. Wolff or the attorneys care to, they can go into any papers delivered, but with respect to the opinion of the person a person who is not under oath, you will please disregard that entirely." (Parenthetical insertion ours).
The foregoing recitation from the record conclusively demonstrates that action of the court was eminently proper and that under the circumstances the jury should have been discharged. The answer made by the witness was responsive to the question. The trial court could not assume that the witness "intentionally injected" the $41,000 figure into the answer. And even if the answer had been wholly unresponsive, the trial court effectively removed any harmful effect thereof in so far as it was possible to so do, short of discharging the jury. If juries must be discharged every time an unexpected prejudicial answer is elicited or given on cross-examination, few cases would reach final disposition.
The other "incidents" complained of, though not properly preserved for review, have been examined. None of them singly or in combination or together with the two specifically dealt with above, had the effect of preventing a fair trial.
The judgment is affirmed.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.