**Lester MILLER, d/b/a Miller & Son, (Plaintiff) Respondent,**

**v.**

**O. S. WILSON and Stanley Wilson, d/b/a O. S. Wilson & Son, Willdale Farm, (Defendants) Appellants.**

**No. 31721.**

St. Louis Court of Appeals.

Missouri.

July 21, 1964.

**32**

Earl L. Veatch, Monticello, for appellants.

J. Andy Zenge, Jr., Canton, for respondent.

RUDDY, Presiding Judge.

This is an action by plaintiff to recover damages for an alleged fraud charged as having been perpetrated by defendants when they induced plaintiff through a certain representation, later learned to be false,

to purchase a cow. The jury returned a verdict for actual damages in the sum of $1000 and punitive damages in the sum of $250. A remittitur of $250 was ordered by the trial court and accepted by plaintiff. From the aggregate judgment of $1000 defendants appeal.

Defendants contend that this is an action for a breach of contract. In so contending defendants are in error. Plaintiff in his petition alleges that he purchased from the defendants a cow designated as "Lot 64" and named "G. M. Rollo Princess 3" and that said cow was represented to him by defendants as being a cow registered in the American Polled Hereford Association and the American Hereford Association and that defendants represented that papers would be furnished showing the aforesaid registrations. Plaintiff alleges that he purchased said cow believing that she was registered in both Associations so that any calf from said cow, sired by a bull registered in both Associations, could be registered in each of said Associations.

Plaintiff further alleges that said cow was not registered in the American Hereford Association and for that reason her calves could not be registered in said Association; that the defendants knew or were chargeable with knowledge that the representation made by them that said cow was registered in both Associations was false; that defendants intended that the plaintiff would rely upon such representation; that the plaintiff did, in fact, rely upon such representation without knowledge that the representation was false; that under the circumstances the plaintiff had every right to rely upon the representation made by the defendants as to the registration of said cow; that the defendants knew or should have known that said representation was fraudulent and that plaintiff would suffer damages by reason of the misrepresentation; that the misrepresentation was made for the purpose of deceiving the plaintiff and that by reason thereof plaintiff is entitled to actual and punitive damages.

■ Plaintiff's petition contains all of the allegations necessary to sustain an action for fraud and deceit. Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24, 26, and Salmon v. Brookshire, Mo.App., 301 S.W.2d 48, 54.

Plaintiff's evidence shows that he is a farmer and a breeder of registered Polled Hereford cattle and has been in the registered Polled Hereford business for 15 years. Prior to attending the sale at which he purchased the cow he read an advertisement in the Polled Hereford World of a sale to be held at the defendants' farm. He also received from the defendants a catalog describing the cattle to be sold. He attended the sale held by the defendants at Canton, Missouri. At this sale copies of the catalog that had been mailed to him were available. He read and used the catalog and from it learned the terms of the sale and the description of the animals to be sold. On a page of the sale catalog entitled "General Information" was the following statement: "REGISTRATION: A Certificate of Registry and signed transfer will be furnished. The offering is registered in both the American Polled Hereford Association and the American Hereford Association and papers will be furnished accordingly." A further statement appeared on said page and it is as follows: "CATALOG ERRORS: Statements from the auction box sale day take precedence over printed material. We are not responsible for errors in the catalog." The cow described in plaintiff's petition was listed for sale in the catalog. This cow had a calf by her side and the calf was sold separately. Plaintiff purchased the cow for $640 and said that he did so relying upon the paragraph in the catalog "where it says they are all registered in both Associations and will be transferred accordingly." He described the two Associations as the American Hereford Association and the American Polled Hereford Association. He said that an animal registered in the American Polled Hereford Association only is simply a commercial animal. He stated that he requires regis-

tration in both Associations "and so does everybody else." He explained further that if a cow was registered in the American Polled Hereford Association only and had a calf that grew horns, the calf could not be registered in the American Polled Hereford Association if the cow was not registered in the American Hereford Association and, therefore, the calf would be ineligible for registration in either Association and gave that as the reason that a cow that is not registered in both Associations would have no value from the breeder's standpoint, adding, that a Polled animal is just a commercial animal. He said that he first learned that the cow he purchased was not registered in the American Hereford Association about a year after he made the purchase. He did nothing about it at that time, stating "I had another thing that was concerning me greatly at that time." He said that three calves had been born to the cow, having been sired by registered bulls, but that all had been sold "commercially" because the cow had been registered in only one Association, the American Polled Hereford Association. He said that all three of the calves would have been eligible for registration in the American Hereford Association if the cow had been registered in said Association. He further testified as follows: "Q. Mr. Miller, would you state to the Court and jury, please, whether or not you relied on this representation in the catalogue that these cows were registered in both associations? A. I did. That's the first thing you read, the general information here, about the sale offering. Q. Would you have purchased this cow at all if you hadn't thought she was registered in both Associations? * * * A. No. I wouldn't have had her at any price." He gave as the actual market value of this cow when not registered in both Associations from $190 to $210 when sold commercially.

In his cross examination plaintiff testified that the number appearing in connection with the catalog listing of the cow in question represented the number of the American Hereford Association, stating that where just one number appears "it's always Hereford Association." When asked, "Q. Now, then, did you hear it announced from the ring, Mr. Miller, that this cow was what they called a single standard cow," he answered, "that was not announced." He repeated that he did not hear any such announcement and indicated that if one was made he was within hearing distance. Approximately thirty days after the sale he received the certificate of registration in the American Polled Hereford Association.

Victor Hugo Jacquot, a witness for plaintiff, testified that it is the custom for the buyer to rely on the catalog representation as to the registration and the breeding of the cattle offered for sale. He was present when the cow listed in the catalog was sold and was one of the bidders for the cow. He said he heard no announcement made nor was any announcement made to the effect that the cow was a single registered animal. He further testified that the cow in question registered only in the American Polled Hereford Association, had no value as far as breeding purpose was concerned unless the animal was registered in both Associations. He gave as the approximate market value of the cow at the time of the sale the sum of $200. He said that he came to the sale for the sole purpose of purchasing this cow and that he would not have bid on her at all if he had known that she was registered in the American Polled Hereford Association only. When he was asked on cross examination what the number shown beside the listing of the cow in the catalog would represent, he answered, "that would indicate to me that she was registered American Hereford only, because any breeder assumes that when there is only one number behind the cow, that she is registered American Hereford, not Polled Hereford."

O. S. Wilson, one of the defendants, admitted there were two distinct Hereford

Associations, naming them as the American Polled Hereford Association and the American Hereford Association. He did not think it would make any difference in the value of the cow if it was registered in only one Association. He admitted that there was no error in the publication on the "General Information" page of the catalog, but did say that the catalog plainly showed that the cow was registered in one Association only because there was only one number shown. He said that he had the auctioneer announce that this cow was a single standard cow and registered in one Association only and that this announcement was made by the auctioneer.

Stanley Wilson, the other defendant, and John Wilson, a brother of one of the defendants in the case, testified that they heard the auctioneer announce that the cow was a single standard cow, which meant that she was registered in the one Association only. The clerk of the sale and two other witnesses testified that the auctioneer announced at the time the cow was sold that she was registered in the one Association only and the fact that the cow was not registered in both Associations would have little or no effect on her value as a breeding animal.

■ The first point urged by defendants is that the trial court erred in admitting incompetent, irrelevant and immaterial evidence offered by the plaintiff and over the objection of the defendants, asserting that the evidence introduced by plaintiff, concerning the value of calves produced by the cow in question was not admissible since the same did not enter into the question of damages and also asserting that plaintiff did not plead damages arising from the sale of the calves. An examination of the record shows no objection was made to the trial court specifying the grounds that the evidence offered concerning the value of the calves produced was incompetent, irrelevant and immaterial to any issue in the case. The record pertinent to this point is as follows: "Now, what did you do with the first calf that you got from this cow then, after you found that it couldn't be registered in both Associations? A. Took it to the sale barn and sold it commercially. Q. How much did the calf bring? A. A hunderd and thirty five dollars. Q. One hundred and thirty five dollars. What would that same calf have brought on the market at the time you marketed it, if it had been subject to registry in both Associations? Mr. Veatch: We object to that, your Honor. That answer would have to be based on speculation and conjecture." Thereafter, plaintiff's attorney withdrew the question and told the court he would ask preliminary questions showing the knowledge and qualifications of plaintiffs as to resale and market price of registered Polled Hereford cattle that are also subject to registration in the American Hereford Association. After showing that plaintiff was acquainted and familiar with the market price of these cattle, when registered in both Associations, the following transpired: "Q. Now, based on your experience and your knowledge, what would this calf that you sold for $135.00 have brought on the market at the time you sold it for $135, if it could have been registered in both the American Hereford and the American Polled Hereford Associations? Mr. Veatch: If the Court please, we object to that for the same reasons, that the answer has to be based on speculation and conjecture." The court thereafter overruled the objection and permitted the witness to answer. The same procedures took place in connection with the sale of the second calf and the third calf, except in one instance where Mr. Veatch told the court that he objected "for the same reasons heretofore assigned," and then he added, "we don't think it is proper to prove any of the issues in this case." No doubt the trial court took this to mean that he did not think that speculative and conjectural testimony was proper in the case. There is no doubt in our minds that the trial court thought the objection of defendants' counsel was directed to the quali-

cations of the witness, plaintiff, to state what these calves would have brought on the market at the time they were sold if the cow had been registered in both the American Hereford Association and the American Polled Hereford Association. There was no objection made at any time concerning the testimony of plaintiff as to the amount received from the sale of these calves when sold commercially. The only objection was made when plaintiff was asked to give the market value of these calves at the time of their sale if the cow in question had been registered in both Associations as represented. We do not think that defendants made a proper or timely objection to the admissibility of this evidence. In the case of Appelhans v. Goldman, Mo., 349 S.W.2d 204, l. c. 207, the court, quoting from the case of Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539, said: "It is well settled that an objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else the trial court will not be convicted of error for overruling it. * * *" We find that defendants failed to specify before the trial court the grounds that they now specify in this court. For this reason the point asserted is without merit and ruled against defendants.

Defendants' next point asserts that "the court erred in giving plaintiff's instruction 3, for the reason that said instruction did not advise the jury as to the maximum amount which the jury might allow to plaintiffs in assessing their damages; for the further reason that said instruction did not correctly define and set forth the elements which the jury should take into consideration in assessing damages, and for the further reason that said instruction put into issue the question of punitive damages."

In sub-points asserted in support of the above point defendants state "(1) Where petition limits amount of special damages, instruction omitting such limit is erroneous. (2) Measure of damages in an action for breach of contract is for the court to de-clare in its instructions and not matter for jury to speculate on. (3) In an action for breach of contract, an instruction to assess plaintiff's damages at such sum as the jury might consider he had sustained is erroneous, because leaving the measure of damages to the speculation of the jury."

As we pointed out earlier, defendants are in error in contending that plaintiff's cause of action was one for a breach of contract. The first part of this point asserted by defendants is directed to that portion of plaintiff's instruction 3 covering the measure of actual damages recoverable by plaintiffs. These alleged errors have not been preserved for review. At the trial defendants objected "to the giving of Plaintiff's Instructions numbered 1 to 5, at the request of the plaintiff, and to the giving of each of said instructions, the defendants, by their counsel, duly objected and excepted." In defendants' motion for new trial their only objection to the giving of this instruction is as follows: "3. Because the court erred in giving instruction 3 given by the court at the request of plaintiff, since said instruction put into issue the question of punitive damages when and whereas under the law and the evidence, plaintiff was not entitled to recover punitive damages, and for the further reason that said instruction was misleading." The only portion of this objection contained in defendants' motion for new trial that is directed to that portion of plaintiff's instruction 3 covering actual damages is the latter part of the objection which states that "said instruction was misleading."

This allegation of error contained in the motion for new trial is general in nature and fails to specify wherein said instruction 3 was misleading. Civil Rule 79.03, V.A.M.R. plainly states that "[i]f any specific objections to instructions have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review." No specific objec-

tion to this instruction was made at the trial before submission to the jury and, therefore, it was incumbent upon defendants to specify the allegations of error in the instruction in their motion for a new trial. This they failed to do.

In the case of O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904, the Supreme Court said: "Under this Rule (79.03) and Civil Rule 70.02 specific objections to an instruction may be made wholly before submission to the jury, wholly in the motion for new trial, or partly before submission and partly in the motion for new trial, but unless a specific objection is timely made at one place or the other, the alleged errors therein are not preserved for appellate review. (Citing cases.) The sound and logical reason for this Rule is that specific objections to instructions are to be presented to the trial court where the error, if any, can be corrected without the delay and expense of an appeal. If they are not so presented the party is deemed to have waived them." No specific objections to that portion of instruction 3 dealing with the actual damages recoverable were made at any time during the trial before submission to the jury or in defendants' motion for new trial.

■ In the last part of this point relied on by defendants, they allege that the court erred in giving plaintiff's instruction 3 "for the further reason that said instruction put into issue the question of punitive damages." Their sub-points 4, 5 and 6 deal with this portion of the principal point and have to do entirely and solely with punitive damages. Here again defendants are in violation of the Civil Rules. Civil Rule 83.05(a) plainly states that "[i]f a point relates to the giving, refusal or modification of an instruction (or instructions), such instruction(s) shall be set forth in full in the argument portion of the brief unless the point can be readily discerned and understood from a reading of only the questioned portion of the instruction, in which event it shall be sufficient to set

forth only the latter." That portion of instruction 3 covering punitive damages recoverable by the plaintiffs has not been set forth in defendants' brief as is required under said Civil Rule 83.05(a).

■ In defendants' Points 3, 4 and 5 they complain about the court's action in giving plaintiff's instructions 4 and 5 and refusing defendants' instruction D. All of these instructions involved the submission of punitive damages. None of these instructions or any portion thereof have been set out in defendants' brief and therefore are not reviewable, because of defendants' failure to comply with Civil Rule 83.05(a) heretofore cited.

■ However, our review of the pleadings and evidence in this case shows that the plaintiff was entitled to have punitive damages considered by the jury and that there was no error in permitting the jury to return a verdict including punitive damages. Luikart v. Miller, Mo., 48 S.W. 2d 867, 871; Dunham v. Tenth Street Garage and Sales Co., Mo.App., 94 S.W.2d 1096, 1099. Plaintiff's instruction 4 told the jury that malice "does not mean hatred, spite or ill will, as commonly understood, but it means a wrongful act intentionally done without just cause or excuse." This instruction correctly defined malice as it applied to the facts in this case. Simpson v. Burnett, 299 Mo. 232, 252 S.W. 949, 954; Dunham v. Tenth Street Garage and Sales Co., supra.

■ In their last point defendants contend that the verdict of the jury is excessive, pointing out that "damage for seller's breach of contract is difference between contract price and market value, or, if none, reasonable value of goods." Citing Mankofsky-Goldstein Shoe Co. v. J. W. Carter Co., Mo.App., 33 S.W.2d 1049. We again point out that this is not an action for breach of contract but is one for fraud and deceit. Plaintiff's instruction 3 told the jury that if "you find the issues for the Plaintiff, you shall assess the amount of

Plaintiff's recovery at the difference, if any, between the value of the cow mentioned in evidence at the time Plaintiff purchased her and what her value would have been, if she had been registered in both Associations, * * *." This is the correct rule for the recovery of damages in a tort action for fraud and deceit where the property in question is retained by the one defrauded. Louis Steinbaum Real Estate Co. v. Maltz, Mo., 247 S.W.2d 652, 655, 31 A.L.R.2d 1052; Dolan v. Rabenberg, 360 Mo. 858, 231 S.W.2d 150; Menke v. Rovin, supra; Jeck v. O'Meara, 343 Mo. 559, 122 S.W.2d 897, 905, and Salmon v. Brookshire, supra.

 On the issue of actual damages plaintiff's evidence shows that the value of the cow mentioned in evidence at the time plaintiff purchased her was $190 to $210 when sold commercially. As to what her value would have been had she been registered in both Associations, the record shows the sum to be $640. It is true that this is the sum plaintiff paid for the cow, and in the absence of any other testimony on the part of plaintiff we assume this to be the value the cow would have been had she been registered in both Associations. Therefore, the difference between the value of the cow at the time purchased and what her value would have been if she had been registered in both Associations is $430. Unfortunately, plaintiff's instruction 3 which, as we have said, is not properly preserved for review, in addition to permitting the jury to find as actual damages the difference between the value of the cow mentioned in evidence at the time plaintiff purchased her and what her value would have been if she had been registered in both Associations, permitted the jury to further find "for any loss, if any, that you find and believe from the evidence the Plaintiff suffered which reasonably resulted from said cow not being registered in both Associations." As we have pointed out heretofore, the trial court admitted evidence showing the birth of three calves from the cow in question and further

showing what plaintiff received from the sale of these calves and the market price of these calves had they been eligible for registration in both Associations. While the portion of instruction 3 set out above did not directly refer to the loss in connection with the sale of the calves, there was no other evidence that would permit the jury to bring in a verdict in excess of the difference between the value of the cow when purchased and its market value if it was eligible for registration in both Associations. Obviously, the jury considered as an element of damage the difference in value of the calves if registered or eligible for registration and their value as calves not eligible for registration. As said in the case of Salmon v. Brookshire, supra, these items are not within the scope of the applicable measure of damage rule, and therefore plaintiff was not entitled to recover for this item. As we have pointed out, the court entered a remittitur order of $250 but did not indicate whether the remittitur applied to the actual or punitive damages or both. We believe that because of the excess of the award for actual damages, the court intended that the remittitur be applied to the actual damages; but whether or not this was intended, we think the actual damages are still excessive. The amount of the punitive damages lies wholly within the discretion of the jury if it sees fit to award them. Menke v. Rovin, supra.

 Inasmuch as there is no evidence that would support the judgment as reduced by the trial court we find said judgment to be excessive. If plaintiff will, within fifteen days from the date of filing this opinion, enter here a remittitur of $320, the aggregate judgment for $680 as of the date of the original judgment will be affirmed; otherwise the judgment will be reversed and the cause remanded for a new trial on the issue of damages alone.

ANDERSON, J., and L. F. COTTEY, Special Judge, concur.