**Kenneth L. DeBOW and Patricia DeBow, Appellants,**

**v.**

**Alma E. HIGGINS, Respondent.**

No. 52812.

Supreme Court of Missouri, Division No. 2.

March 11, 1968.

Church, Jones & Karchmer, Donald W. Jones, Springfield, for plaintiffs-appellants.

Theo. G. Scott, Buffalo, for defendant-respondent.

LACKLAND H. BLOOM, Special Judge.

This suit was instituted in Dallas County and was removed by change of venue to Laclede County. Appellants (herein referred to as plaintiffs) sought judgment in the trial court for actual damages of $15,000 and punitive damages of $50,000 arising out of alleged fraudulent misrepresentations of respondent (herein referred to as defendant) in the sale of a motel and gasoline service station. During and after the trial plaintiffs unsuccessfully sought to amend the prayer of their petition to conform to the alleged proof of actual damages of $18,600. The case was tried by the court without a jury and judgment was entered in favor of plaintiffs in the sum of $3,000. Plaintiffs after having unsuccessfully sought to have the findings of fact, conclusions of law and judgment amended to award plaintiffs actual damages in the amount of $18,600 and punitive damages in the amount of $50,000, or for a new trial on damages alone, have appealed to this court on the ground

that the trial court erred in awarding only $3,000 actual damages and in refusing an award of punitive damages. Since the difference in the amount prayed for and the recovery exceeds $15,000, this court has jurisdiction. Jack L. Baker Companies, Inc. v. Pasley Manufacturing and Distributing Company, Mo., 413 S.W.2d 268, 270; Glore v. Bone, Mo., 324 S.W.2d 633, 634.

Mr. Kenneth L. DeBow, one of the plaintiffs, testified that in November 1963 he and his wife, who were living in Springfield, Missouri, were looking for a motel to purchase. On November 14, 1963, he was taken by a Mrs. Smith, a real estate saleslady, to a motel and service station located on Highway 65 in Buffalo, Missouri, known as the "Shady Nook Motel," where he met defendant. Defendant was uncooperative and would not show them around and they left. The next day he and his wife returned to the motel and learned from defendant that the motel was listed with the Queen City Real Estate Company and they were referred by defendant to a Mrs. Riddle. The next day plaintiffs went to see Mrs. Riddle and were told that the motel was listed for sale for $35,000. The same day Mrs. Riddle took them to see defendant who showed them around the motel. Mr. DeBow asked defendant to see her books or an income tax statement. According to DeBow defendant said that she did not have them as her lawyer was working on them and she handed him "two brochures" to take and look over. These so-called brochures were introduced into evidence as Plaintiffs' Exhibits 1 and 2. Exhibit 1 was a one-page printed "flyer" describing the properties, and Exhibit 2 was a handwritten statement of "Motel and Station Income." Since they constitute the basis of plaintiffs' allegations of fraudulent representations, we set them out in full.

### EXHIBIT 1

"Shady Nook Motel and Standard Station is at the junction of Main Street and U. S. Highway 65 in Buffalo, Missouri, just 32

miles north of Springfield. Located on 3½ level acres, 600 ft. highway frontage, with 2 acres suitable for development or expansion. Neat and attractive with 2 neon signs and all buildings neon trimmed.

SEPARATE HOME of 6 rooms only 4 years old, consists of office, kitchen, living room, bath, 2 bedrooms, and a large laundry and linen room. Office desk and mangle included, as well as 1½ extra changes of linen, towels, etc.

MOTEL UNITS consist of 5 singles, 2 doubles and 2 kitchenettes, all modern. 9 butane heaters, 4 TV's, 5 air-conditioners, 2 gas ranges, 2 refrigerators, 6 hot water heaters, and all motel furnishings and 8 lawn chairs included.

GAS STATION is the only Standard Station on Highway 65 between Springfield and Warsaw (81 miles) and only sells gas and oil. All equipment included—soda box, counter, stove, fan, signs, nozzles, filters, etc. Pumps and tanks owned by Standard Oil. Inventory averaging $500.00 to be inventoried.

In 1962 the Motel grossed over $10,000, about 80% net. The station pumped over 100,000 gallons, netting about $100 a week, with help. There is a 1150 gallon owned butane tank connected to all buildings. Entire property recently redecorated.

All taxes $290.00 a year, fire insurance $132.00, liability $51.00. Property is clear and is a steady year-round business.

Since the owner is now handicapped and wishes to retire, the price has been reduced to $......, 1–3 down, balance $100 a month, plus 6% interest. Possession in 30 days.

ERNEST and ALMA HIGGINS

SHADY NOOK MOTEL, Buffalo, Mo."

EXHIBIT 2

"Motel and station income

| Year | Motel Gross | Expenses | Motel Net | Station Net | Total Net |
|---|---|---|---|---|---|
| 6 Mos—1960 | 7140.60 | 1890.20 | 5,250.40 | (rent) 472.50 | 5,722.90 |
| 1961 | 10,171.15 | 1735.10 | 8,419.05 | 4,941.10 | 13,368.15 |
| 1962 | 10,972.15 | 1921.00 | 9,051.10 | 5,150.75 | 14,201.85 |
| 9 months 1963 | 8,142.33 | 1230.79 | 7,161.54 | 4,595.06 | 11,756.60 |

9 mos gross for station $36,728    pumped 97,915 gal. with 7 day a week help and short hours

Sept utilities, etc phone, water for motel and station $40.13"

———◆———

Thereafter on November 25, 1963, plaintiffs entered into a contract for the purchase of the motel and service station for an agreed price of $33,000, paying $1,000 earnest money. On January 25, 1964, they closed the purchase by paying defendant an additional $11,000 cash, the defendant taking back a note and mortgage for the balance of $21,000 which was payable $200 per month, including principal and interest. Plaintiffs moved into the motel on January 6, 1964, and took over operation the same day. According to DeBow it was about two or three months later that they learned that the information they were given with respect to the income was false. He testified that he relied on the income information and would not have purchased the

motel if he had known the motel profits were not as defendant represented. The plaintiffs continued to operate the motel and service station until February 1965. Sometime before February 1965 the plaintiffs listed the property for sale at $30,000 but were not able to sell it. In May 1964 plaintiffs placed the property for sale at public sale and tried to get what they owed on it but received no bids. In February 1965 they sold it to Lake Front Investment Corporation, the purchaser assuming the balance of plaintiffs' mortgage in the amount of $19,900 or $20,000 and plaintiffs accepted two houses and a trailer and a second mortgage as part of the purchase price. Both houses were mortgaged and it is not clear from the evidence at what value plaintiffs accepted them in trade. It appears from DeBow's testimony that plaintiffs netted $408.50 on one and $486 on the other. The second mortgage taken in trade by plaintiffs had a face value of $1,500 but was in arrears and they netted $250 on it. Plaintiff DeBow estimated the trailer as being worth $2,600 at the time of trial after he fixed it up.

Mabel Riddle testified that in November 1963 she was a real estate saleslady for Queen City Real Estate Company and showed plaintiffs the motel. She testified that defendant stated that the information on Exhibit 1 was true. She was questioned by defendant as to the value of the property purchased by plaintiffs. She testified that she had been in the real estate business ten years and was out for six and back in for six years. She had experience in selling and appraising real estate to determine its value, was familiar with defendant's property, and thought it was worth what plaintiffs paid for it. She said, however, she was not an expert nor a qualified appraiser. She had sold two motels and had owned two herself. She had never appraised a' motel. In her opinion the motel and station were worth $33,000 whether the representations made on Exhibit 1 were true or not. She based her estimate of the value by breaking it down into units, including the land, the separate motel units, the house, and the station. She did not appraise this motel as it was given to her for listing at a price. She had never seen Exhibit 2.

William A. Ryan testified for plaintiffs as an expert witness. He testified he was a real estate broker specializing in the sale of motels and hotels. He had listed for sale between 400 and 500 motels in 28 states and sold 11 in the year of trial. In determining the market value of a motel he considers the location, age of the property, its general condition, and its income. Considering these factors a motel is placed in a certain scale and the gross income is multipled by a variable factor to determine the market value. He tried to sell defendant's motel in the latter part of 1963. At that time he went over the figures on Exhibit 2 with defendant and she represented to him that they came off of her books. It was his opinion based on the 1962 income as represented that the motel was worth $32,600. This was based on a factor of 2½ times the annual gross income and one year net on the service station. Based on actual 1962 income figures as an operating property the motel and station were worth, in his opinion, $11,650. As a physical structure converted to best economic use for monthly tenants he placed a value of $14,000 on the properties. The witness had listed the property for sale in June 1961 for $38,500. Plaintiffs offered as Exhibit 4, copies of the joint Federal Income Tax returns of Ernest F. and Alma Higgins for 1960, 1961 and 1962 which showed a gross and net income for the Shady Nook Motel for three years as follows:

| Year | Gross | Net |
|------|-------|-----|
| 1960 | 2,161.00 | 351.00 |
| 1961 | 3,179.27 | 811.31 |
| 1962 | 4,291.10 | 895.56 |

The defendant offered as evidence only the depositions of defendant Alma E. Higgins taken on September 3, 1964, and September 3, 1966.

At the request of the plaintiffs the court entered findings of fact and conclusions of law in which the court found that plaintiffs purchased the Shady Nook Motel and service station in reliance upon the correctness of the income figures contained in Exhibits 1 and 2, which statements were material and false and that defendant knowingly made said statements or made them at a time when she was "consciously ignorant" as to their truth or falsity and made them intending that plaintiffs should rely on the truth of the statements. The court found that the value of the property at the time of sale to plaintiffs was $30,000 and plaintiff suffered actual damages of $3,000. The court found that under the evidence that punitive or exemplary damages should not be assessed.

■ This case having been tried by the court without a jury our review under Civil Rule 73.01, V.A.M.R. is de novo on both the facts and the law, limited, however, to the specific matters urged on appeal by plaintiffs. Schlanger v. Simon, Mo., 339 S.W.2d 825, 828; Bowers v. Spinaio, Mo. App., 421 S.W.2d 790, 792. Defendant has not appealed from the judgment against her and accordingly we direct our attention solely to plaintiffs' allegations of error, to-wit: (1) That the award of $3,000 damages is inadequate and against the weight of the evidence; and, (2) That the court erred in refusing to award them punitive damages.

In assessing the actual damages, the trial court found the seller "liable in damages to buyer for the difference between the value of the property as represented and the actual value of the property at the time of sale." This is commonly known as the "Benefit of the Bargain" rule and plaintiffs concede that to be the correct measure of damages. Louis Steinbaum Real Estate Co. v. Maltz, Mo., 247 S.W.2d 652, 655, 31 A.L.R.2d 1052; Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24, 27; Miller v. Wilson, Mo.App., 381 S.W.2d 31, 38. Plaintiffs contend, however, that the court did

not properly apply the rule to the evidence in this case.

■ Defendant offered no evidence on the issues of damages and relies on what she deems to be favorable and contradictory opinions as to value rendered by plaintiffs' witnesses to support the trial court's award of damages. We agree with defendant that the judgment is not to be set aside unless it is clearly erroneous and generally where there is a conflict in the testimony due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R.; Pope v. Cox, Mo., 417 S.W.2d 929, 933; Griesenauer v. Belleau Lake Development Co., Mo.App., 421 S.W.2d 785, 786.

In awarding plaintiffs $3,000 damages, the court found the value of the property at the time of sale to be $30,000, the amount plaintiffs subsequently listed the same for sale. Thus the court fixed plaintiffs' actual damages at the difference between the amount they paid for the property, $33,000, and what the court found to be its actual value. Plaintiffs urge that the evidence dictates a market value at the time of purchase of $14,000 and resultant damages of $18,600, the difference between the values set by their witness Ryan.

We do not believe plaintiffs' subsequent listing of the property for sale at $30,000 to constitute evidence of the value on the date plaintiffs purchased the same. 37 C.J.S. Fraud § 147b (1), p. 493. Especially is this true in the light of DeBow's testimony elicited by defendant over plaintiffs' objection.

"Q Did you list it for what you thought it was worth?

"A I listed it for about $15,000 more than I thought it was worth. * * *

"Q What did you list it for?

"A I listed it for approximately $30,000 and the realtor said—

"Q   I'm asking what you listed for?

"A   Thirty thousand dollars, including the real estate commission.  That is, the thirty thousand dollars includes the real estate commission.

"Q   You mean you were going to pay somebody to sell it for you?  The man that bought it you were going to ask him thirty thousand dollars?

"A   Yes, the rate I listed was, that was nine thousand over what we owed on it shortly after we bought it.

"Q   Did you sell it?

"A   No, we did not.  We held an auction in May and tried to get what was owed on it, and there was a number of prospects there but they wouldn't submit a bid."

■   We think this testimony is not evidence of the value of these properties at the time of sale.  It is true that a resale by the defrauded purchaser at or near the time of his purchase may constitute relevant and persuasive evidence of the market value on the prior date.  Louis Steinbaum Real Estate Co. v. Maltz, supra, 247 S.W.2d l. c. 655.  This is not to say, however, that a mere listing for sale under the circumstances herein set forth is helpful in fixing such value, especially in view of the fact that even at public auction no bids were received.

Was there any other evidence from which the court could arrive at a $30,000 value on the date of sale?  Mrs. Riddle, offered by plaintiffs solely to establish defendant's representations, on cross-examination expressed an opinion the property was worth what plaintiffs paid for it.  That would be $33,000 and plaintiffs would have sustained no loss.  Mrs. Riddle, although disclaiming the status of an expert, had been a real estate saleslady some fifteen years, had sold another motel in Wichita, Kansas in addition to this one, and more importantly, perhaps, had owned two motels.  She felt the property to be worth what plaintiffs paid for it even if the representations as to income were not true.  She reached her opinion based on what she termed the unit method of appraisal.  In describing this method she testified that, "We were told to break it down into units."  With respect to the four units on the north side she said, "We'll say $2,500, which should be a cheap one, $10,000—and you have four others. Let's see—I can't say this would be correct, but this is the way they told us to say the others were worth five thousand, and then the house would be worth ten thousand. I can't say this is what it would be worth, and then the station would be worth so much."  She added that she did not appraise this motel prior to sale as, "It was given to me at a price."

■   It is not clear whether in testifying to unit values the witness was giving the result of an appraisal or an example of how it would have been done if an appraisal had in fact been made.  In giving her opinion that it was worth what plaintiffs paid for it she said, "We consider the land, highway and things like that and what each building would be worth."  We do not say that the witness was not a competent witness to express an expert opinion on the value of the property in question.  Harris v. A. P. Nichols Inv. Co., Mo.App., 25 S.W.2d 484, 488; 32 C.J.S. Evidence § 546(115), p. 430. We do say that her testimony on the issue of the value of this property on the date of purchase by plaintiffs was far too vague and indefinite with respect to the basis on which it rested to be accorded much, if any, weight by the trier of the facts.  Nor do we find from the record before us that the trial court based his finding on her testimony but rather, as previously indicated, on the listing price set by plaintiffs.  Accordingly the judgment of the trial court in awarding actual damages in the sum of $3,000 cannot stand.

We now consider whether or not upon a review of the record de novo the evidence is sufficient to enable us to direct entry of judgment for the proper amount of damages.

■ Plaintiffs urge that the only witness to testify as to the difference in values of the property as represented and its actual value was William A. Ryan. Ryan's qualifications as an expert were not successfully challenged. He not only was familiar with this particular motel since 1961 but at one time had it listed for sale and had been given the income figures represented on Exhibits 1 and 2 by defendant's husband prior to the latter's death. He was in the business of appraising and brokering hotels and motels and had sold eleven during the year 1966 and had listings of 400 to 500 in twenty-eight states. Certainly he qualified as an expert. State ex rel. State Highway Comm. v. Barron, Mo., 400 S.W.2d 33, 36.

Ryan's opinion as to the value of the motel and service station if the representations as to income were true, based in part upon the capitalization of the income of 1962 as represented by defendant, seems to us to be supported by sufficient elements to entitle it to persuasive weight, especially in the absence of any conflicting evidence. He reached a valuation of $32,600 by applying a 2.5 factor to the gross income as represented on Exhibit 2 for that year. This resulted in a motel valuation of $27,-430.32. He added to this a valuation of one year's net income from the service station which was represented to be $5,150.75. This gave a combined valuation of $32,581.-07 which the witness rounded off to $32,600. He testified that the factor applied to gross income to arrive at a valuation depends upon the motel's location, age, condition of the property and may vary from four times the annual gross income for a plush motel to three and one-half to four times annual gross income for a AAA motel. In arriving at a 2.5 factor for the Shady Nook Motel he took into consideration its age, some of the units of which were from ten to fifteen years of age, and the general condition of the units.

We recognize that the capitalization of income method of evaluating properties may in some circumstances be speculative and uncertain. Shelby County R-IV School District v. Herman, Mo., 392 S.W.2d 609, 614. However, under the particular facts in this case, and in view of the elements considered by Ryan in arriving at a capitalization factor, we find that the valuation of $32,600 fixed by the witness does constitute evidence calculated to accurately reflect the valuation of this motel and service station, assuming the income representations were true.

We are faced, however, with more serious difficulties in fixing an actual value of the properties at the time of purchase in November 1963. In the first place the only evidence of actual income for the year 1962 is contained in the income tax returns of that year. This revealed a gross profit of $4,291.10 for the combined operation of the motel and service station and a net profit of $895.56. Ryan was of the opinion that the income was insufficient to place a valuation on the properties as an "operating business," and undertook to arrive at an appraisal based upon a conversion of the properties to produce monthly rental income. He testified as to probable rental income, estimated expenses for taxes, insurance, utilities and maintenance. In this manner he concluded that based on a ten percent return from the motel units, they were worth $7,100 and he added $6,000 for the house and rounded off his appraisal at $14,000 including the service station.

■ We believe this method employed by Ryan too speculative and based on too many variable assumptions to be of much assistance in arriving at a reasonable value for this motel and service station. Massey v. Goforth, Mo.App., 305 S.W.2d 894. This is especially true since DeBow himself thought the property worth $15,000 and Mrs. Riddle thought it worth from $25,000 to $33,000, depending on how her testimony is viewed and analyzed. Furthermore, there was some evidence that plaintiffs resold the motel and station far in excess of the valuation placed thereon by Ryan and DeBow himself. Plaintiffs rightfully assert that the valuation must be made as of the

date of the fraudulent transaction and plaintiffs' damages under the "Benefit of the Bargain" rule are not to be reduced by any subsequent sale. This is true, but a subsequent sale, not too remote in time, may constitute some evidence of the value on the date of the fraudulent sale. Horigan Realty Co. v. Honan, Mo., 275 S.W. 949; Louis Steinbaum Real Estate Co. v. Maltz, supra, 247 S.W.2d 1. c. 655. In February 1965 plaintiffs traded the motel and service station for two houses, a trailer, and a $1,500 second mortgage, the purchasers assuming the balance of plaintiffs' mortgage in the sum of $19,900. It may be true as DeBow testified that they netted very little out of the trade, but the fact is that they apparently received profit or equities in the two houses of $408.50 and $486 respectively, netted $250 on the mortgage, and retained at the time of trial a trailer which they valued at $2,600 after making certain improvements. Uuder the particular circumstances of this case we feel the sale by plaintiffs in February 1965 wasn't so remote in time as to destroy its relevancy as to the value of the motel and station in November 1963, especially in the absence of any evidence which would compel the conclusion that the value had been substantially affected in the interim. It is not necessary for us to determine what in fact plaintiffs received in exchange. It is sufficient for this review to note that to the extent plaintiffs may have been relieved of a liability of some $19,900 on their mortgage and have netted any amount in excess thereof, the transaction is some evidence that the value of the properties in November 1963 may have been in excess of the amounts testified to by either Ryan or DeBow. Accordingly we are unable upon the record before us to assess plaintiffs' actual damages.

Since the cause will have to be remanded for a trial as to actual damages, we consider plaintiffs' contention that the trial court erred in failing to make an award of punitive damages. Such damages are never allowable as a matter of right and whether or not the same are awarded lies wholly within the discretion of the trier of the facts. Bellerive Country Club v. McVey, 365 Mo. 477, 284 S.W.2d 492, 503; Mitchell v. Pla Mor, Inc., Mo., 237 S.W.2d 189, 191. The trial judge specifically found that "punitive or exemplary damages should not be assessed." We see no reason to disturb this finding. Under the evidence although defendant fraudulently misrepresented the income of the motel and service station, in view of the fact that the income figures were prepared and furnished to persons other than plaintiffs by her husband prior to his death, we cannot say that defendant's part in the transaction showed such actual or legal malice that the trier of the facts must be charged with an abuse of discretion in denying punitive damages.

The judgment below is affirmed with respect to liability of the defendant and is reversed and remanded for a new trial limited to the amount of actual damages sustained by plaintiffs.

FINCH, P. J., and DONNELLY, J., concur.

EAGER, J., not sitting.